*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0227p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MARK SCHAFER et al.,

        *Plaintiffs-Appellants,*

  *v.*

CITY OF DEFIANCE POLICE DEPARTMENT et al.
        *Defendants-Appellees.*

No. 07-3933

>

---

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 06-07084—James G. Carr, Chief District Judge.

Submitted : June 5, 2008

Decided and Filed:  June 26, 2008

Before:  GILMAN and COOK, Circuit Judges; COHN, District Judge.[*]

---

**COUNSEL**

**ON BRIEF:**  George R. Royer, Toledo, Ohio, for Appellants.  Stephen Dennis Long, BARAN, PIPER, TARKOWSKY, FITZGERALD & THEIS CO., Toledo, Ohio, for Appellees.

---

**OPINION**

---

      RONALD LEE GILMAN, Circuit Judge.  In March of 2006, plaintiffs Mark Schafer and his two minor children filed a complaint against the City of Defiance Police Department (DPD), DPD officer John Williamson, unidentified DPD officers, and the Defiance County Department of Job and Family Services (DJFS) (collectively referred to as the defendants), alleging various civil rights violations, as well as unspecified violations of federal and state law.  The district court eventually dismissed the plaintiffs' claims for failure to prosecute, and the plaintiffs now appeal.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

# I. BACKGROUND

Mark Schafer was arrested in March of 2004 and charged with various sexual offenses involving his daughter, who was less than 13 years of age. The complaint alleges that DPD officers questioned the children in connection with the arrest without the consent of their parents and "without proper cause or procedure and in violation of their constitutional rights." It further claims that DPD officers caused the children to make incriminating statements by threatening to remove them from their parents' custody. Finally, the complaint asserts that the defendants falsely accused Schafer of engaging in criminal conduct and of being an unfit father on the basis of the information that was allegedly obtained from the children by improper means. On the other hand, Schafer pled guilty to charges of gross sexual imposition involving his daughter, although he continues to deny the charges. The district court eventually bifurcated the jointly filed complaint for the reasons set forth below.

## A.    Procedural history of Schafer's complaint

Schafer and the children—the latter proceeding by and through their mother and natural guardian, Andrea Schafer—filed suit as coplaintiffs. (Because Andrea Schafer is effectively litigating the case on the children's behalf, all references to "Andrea" throughout this opinion denote both her and the children collectively, unless otherwise required by the context.) At a scheduling conference in October of 2006, defense counsel expressed concern to the district court that Schafer and his children, one of whom was the victim of the offense for which Schafer was convicted, were all being represented by the same attorney, George Royer. Defense counsel argued that this created a conflict of interest under Rule 1.7 of the Ohio Rules of Professional Conduct, which addresses conflicts of interest among clients of an attorney. Royer, they asserted, "was in the untenable ethical position" of representing both Schafer, a convicted felon, and his daughter, the victim of his crime, "in an action in which the focus of judicial inquiry was to be the truthfulness of the victim's allegations" against Schafer.

According to the defendants, the district court agreed, stating that such joint representation was "ill-advised," and asking Royer whether he wished to proceed as counsel for Schafer or as counsel for Andrea. Royer allegedly responded that he "would heed the District Court's advice" regarding his representation of parties with conflicting interests and would proceed as counsel for Andrea only. The plaintiffs do not dispute the foregoing facts.

On October 6, 2006, the district court issued an order providing in pertinent part as follows: "Claims of plaintiff Mark Schafer dismissed on motion of defendants, without prejudice to refile within six months of the date of this Order." Schafer was therefore permitted to refile his complaint on or before April 2, 2007. The October 6 order effectively bifurcated the initial complaint into two separate actions: an action by Schafer, which was dismissed without prejudice, and an action by Andrea, which proceeded to discovery as explained below in Part I.B.

On June 7, 2007, more than two months after the refiling deadline had passed, Royer—who was still representing Andrea—requested that the district court extend Schafer's refiling deadline to October 31, 2007, citing communication problems with Schafer due to the latter's incarceration. The court denied the motion on June 13, 2007 and dismissed with prejudice Schafer's complaint for want of prosecution, explaining that "[a] prisoner who files a civil suit, and counsel who undertakes to represent such prisoner, are not entitled to unlimited postponements due to the problems inherent in being confined following a conviction."

Schafer, still represented by Royer, now appeals the dismissal of his complaint. His brief argues that the district court erroneously dismissed the complaint with prejudice for failing to

(1) satisfy the pleading requirements set forth in the Federal Rules of Civil Procedure, and (2) state a claim for relief under Rule 12(b)(6) thereof.

## B.    Procedural history of Andrea's complaint

Although Schafer's complaint was dismissed without prejudice in October of 2006, Andrea's complaint was not. The district court issued an order in November of 2006 calling for the deposition of the remaining plaintiffs (i.e., Andrea Schafer and the children) to be completed on or before December 30, 2006. According to the order, their suit would be dismissed with prejudice for lack of prosecution if the depositions did not occur by that date. The defendants contend, and Andrea does not dispute, that defense counsel repeatedly attempted to contact Royer to schedule Andrea's deposition until finally, on December 21, 2006, Royer agreed to hold the deposition on December 28, provided that it last for only one hour. Royer said that he had to attend a continuing legal education (CLE) seminar on December 28 in order to complete, by December 31, his 2006 and 2007 CLE requirements, and that he planned to attend the deposition during his one-hour lunch break. Accordingly, Andrea's deposition was scheduled to take place on that date at noon in the office of DJFS's counsel in Toledo, Ohio.

Royer agreed to that date and time despite the fact that he had lost contact with Andrea. According to the defendants' motion to dismiss, Royer indicated to defense counsel that he no longer had a good address or telephone number for his clients, and that two attempts to contact Andrea by mail regarding the deposition were returned to him marked "unable to deliver" and "no forwarding address." Nevertheless, Royer said that he sent Andrea a letter notifying her that the deposition would begin at 1:00 p.m. on December 28, 2006. He later realized that he had indicated the wrong starting time, but eventually he was successful in reaching her by phone and confirmed with her that the deposition would begin at noon. Andrea, however, did not appear for the deposition until 1:20 p.m., after both Royer and DPD's attorney had left.

Shortly thereafter, the defendants moved to dismiss Andrea's complaint for want of prosecution. Royer opposed the motion and requested that the deposition be rescheduled, explaining that the letter that he had sent to Andrea notifying her of the deposition had specified the wrong start time (although he later confirmed the correct time with her) and that Andrea had gotten lost on her way to the deposition. According to the defendants, however, Andrea did not call Royer to alert him that she would be late or that she was having difficulty in finding where the deposition was to be taken. Royer also noted that the deposition had been scheduled at an inconvenient time for him personally because he was moving offices and because of his CLE seminar.

Ruling on the defendants' motion in an order dated March 6, 2007, the district court observed that the "Plaintiffs' attention to the obligation to prosecute this action . . . can best be described as nearly imperceptible. For a period of time, [Andrea] failed to keep her counsel informed about her whereabouts." The court nevertheless gave "plaintiffs one last chance to get on board" with their case. It ordered Andrea and, if requested by defense counsel, the children themselves, to appear for depositions on or before April 16, 2007. Their failure to appear, the court warned, would result in the dismissal of their complaint with prejudice.

In addition, Andrea was ordered to reimburse the defendants for the expenses that defense counsel had incurred in connection with the scheduled December 28, 2006 deposition. The court ordered defense counsel to provide Royer with a statement of their fees and costs by March 15, 2007, instructed Royer to confirm by April 1, 2007 that Andrea would pay the amount submitted, and directed Andrea to pay the amount in full no later than June 1, 2007.

On April 2, 2007, Royer asked for an extension until April 20 to fulfill the requirements of the March 6 order, explaining that his work had been disrupted because he had been moving his

office for the previous two months. The district court granted the request "as a final extension" in an order dated April 9, 2007. It also noted that Royer had once again failed to electronically file the motion, in violation of prior court orders. The court issued four orders during the course of the proceedings below directing Royer to file electronically as required by the court's local rules and seven notices regarding his failure to do so.

On May 9, 2007, the defendants renewed their motion to dismiss Andrea's complaint for want of prosecution on the ground that she had not complied with the court's November 17, 2006, March 6, 2007, or April 9, 2007 orders. They specifically noted that Andrea had failed to attend the December 28, 2006 deposition or appear for a deposition by the April 20, 2007 deadline, and had not timely accepted or rejected the defendants' statement of costs relating to the scheduled December 28, 2006 deposition. The defendants further argued that the ongoing litigation was burdensome because it had a detrimental effect on the City of Defiance's creditworthiness and ability to finance various capital projects. They also explained that Williamson, the one DPD officer specifically named as a codefendant, had encountered problems in closing on a home mortgage because of his involvement in the lawsuit. Royer filed a brief response in opposition, arguing that the defendants had requested attorney fees that were not related to the December deposition, that Andrea had not received a bill from the defendants, and that dismissal of the complaint would be "an extreme remedy" where Andrea had "only" been late to the deposition.

On June 13, 2007, the district court granted the defendants' motion to dismiss with prejudice Andrea's complaint for want of prosecution, citing the reasons set forth in the defendants' motion. It explained that Andrea had failed to comply with the court's orders and repeatedly requested deadline extensions when she did not comply, and that "the pendency of the litigation has had, and will continue to have an adverse impact on [the defendants'] credit-worthiness."

The district court went on to note that, even assuming that the defendants had not provided a statement of their December 28, 2006 deposition expenses, Royer had been "dilatory in not contacting defendants' attorney and asking for such a statement. That much, at least, was required to show a good faith effort to comply with my orders." Finally, the court stated that "[t]his case has languished without action, progress, or compliance with orders issued by the undersigned." Andrea, still represented by Royer, timely appealed the dismissal of the complaint, raising the same arguments that she had asserted in opposing the defendants' final motion to dismiss.

## II. ANALYSIS

### A.     Standard of review

"We apply the abuse-of-discretion standard when reviewing a district court's decision to dismiss a lawsuit for failure to prosecute." *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005). "An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made." *Stough v. Mayville Community Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly applies the law, or uses an erroneous legal standard." *Id*.

### B.     Dismissal for failure to prosecute

Rule 41(b) of the Federal Rules of Civil Procedure confers on district courts the authority to dismiss an action for failure of a plaintiff to prosecute the claim or to comply with the Rules or any order of the court. *Knoll v. AT&T*, 176 F.3d 359, 362-63 (6th Cir. 1999). "This measure is available to the district court as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-supported courts and opposing parties." *Id*. at 363 (brackets and internal quotation marks omitted). A district court therefore "must be given substantial discretion in serving these tasks." *Id*.

Nevertheless, "[t]he dismissal of a claim for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the plaintiff." *Wu*, 420 F.3d at 643 (internal quotation marks omitted); *see also Little v. Yuetter*, 984 F.2d 160, 162 (6th Cir. 1993) (identifying the "competing concerns" that guide a court's decision to dismiss an action for failure to prosecute as follows: "the court's need to manage its docket, the public's interest in expeditious resolution of litigation, and the risk of prejudice to a defendant because the plaintiff has failed to actively pursue its claims," and, "[o]n the other hand[,] . . . the policy which favors disposition of cases on their merits"). "Contumacious" is defined as "perverse in resisting authority" and "stubbornly disobedient." *Webster's Third New International Dictionary* 497 (1986).

Four factors are considered in reviewing a district court's dismissal for failure to prosecute:

(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Knoll*, 176 F.3d at 363. The foregoing factors "have been applied more stringently in cases where the plaintiff's attorney's conduct is responsible for the dismissal." *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 367 (6th Cir. 1997). "Although typically none of the factors is outcome dispositive, . . . a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Knoll*, 176 F.3d at 363.

To support a finding that a plaintiff's actions were motivated by willfulness, bad faith, or fault under the first factor, the plaintiff's conduct "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Wu*, 420 F.3d at 643 (brackets and internal quotation marks omitted) (concluding that the plaintiff's failure to seek a default judgment did not evince the requisite intent under the first factor because the plaintiff had relied on the fact that a stipulated order to stay the proceeding was pending before the court); *see also Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 592 (6th Cir. 2001) (finding that the plaintiff was not culpable under the first factor because the record lacked evidence showing that the plaintiff had either failed to respond to discovery requests or had acted in contempt of a court order compelling cooperation with such requests). *But see Harmon*, 110 F.3d at 368 (affirming the dismissal of the case and finding the plaintiff's conduct to be "stubbornly disobedient and willfully contemptuous" where the plaintiff, for nearly one year, failed to respond to discovery requests and a motion to compel, did not comply with a court order, and filed no response to a motion to dismiss even after the district court granted an extension).

This court has held, for purposes of the second factor, that a defendant is prejudiced by the plaintiff's conduct where the defendant "waste[d] time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide." *Id.*; *see also Wu*, 420 F.3d at 644 (finding no prejudice to the defendant from the plaintiff's failure to prosecute where the defendant did not oppose the plaintiff's subsequent efforts to reinstate the lawsuit).

As for the third factor, "[p]rior notice, or the lack thereof, is . . . a key consideration" in determining whether a district court abused its discretion in dismissing a case for failure to prosecute. *Stough*, 138 F.3d at 615. "This court has repeatedly reversed district courts for dismissing cases because litigants failed to appear or to comply with pretrial orders when the district courts did not put the derelict parties on notice that further noncompliance would result in dismissal." *Wu*, 420 F.3d at 644 (internal quotation marks omitted).

Finally, "the sanction of dismissal is appropriate only if the attorney's actions amounted to failure to prosecute and no alternative sanction would protect the integrity of the pretrial process." *Id.* (brackets, emphasis, and internal quotation marks omitted). Such caution is necessary because "where the district court has not manifested consideration of less drastic sanctions, it is more difficult, although not impossible, for this court to conclude that the district court exercised its discretion with appropriate forethought." *Harmon*, 110 F.3d at 368-69. This court, however, has "never held that a district court is without power to dismiss a complaint, as the first and only sanction, solely on the basis of the plaintiff's counsel's neglect" and is "loathe to require the district court to incant a litany of the available lesser sanctions." *Id.* at 368 (explaining that the court "do[es] not assume that lesser sanctions were not considered simply because their consideration is not articulated"). Although this court "understand[s] this factor to require particular caution in the absence of contumacious conduct," a district court's failure to articulate lesser sanctions "is not necessarily fatal." *Id.* at 368 (internal quotation marks omitted).

## C.        Dismissal of Schafer's complaint

Schafer argues on appeal that the district court erred in dismissing his complaint for failure to satisfy the pleading standards set forth in Rule 8 and to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. But the June 7, 2007 order of dismissal shows that the district court unambiguously dismissed the complaint solely because Schafer had failed to refile his complaint by the April 20, 2007 deadline. In light of the record, Schafer's argument at best demonstrates a lack of understanding of the district court proceedings and, at worst, represents an attempt to misrepresent to us the reasons for the district court's decision.

The district court, to be sure, did not explain the basis for its earlier dismissal of Schafer's complaint, *without* prejudice, in October of 2006. Its order simply states that the complaint was being dismissed without prejudice "on motion of defendants," and the record unfortunately contains no documentation confirming the specific reason for that dismissal. The defendants contend that the district court dismissed the complaint because of the ethical concern about the same attorney representing both Schafer and Andrea. Because Schafer does not challenge that assertion, we accept the defendants' explanation of the basis for the district court's dismissal of his complaint without prejudice in October of 2006.

So even though more information about the circumstances surrounding the October 2006 dismissal without prejudice would have aided our review, this appeal concerns the district court's June 13, 2007 judgment dismissing Schafer's complaint *with prejudice* for failure to prosecute his case. Our analysis therefore applies the four-factor test that is set forth in Part II.B. above to that judgment.

### 1.        *The first factor: willfulness, bad faith, or fault*

The district court's dismissal of Schafer's complaint with prejudice rested on the fact that Schafer had not refiled his complaint within the six-month period specified in the court's October 6, 2006 order. Specifically, the court rejected Schafer's request for a deadline extension (submitted two months after the refiling period had expired) as well as his argument that being incarcerated caused attorney-client communication problems. It explained that prisoner-plaintiffs are not entitled to "unlimited postponements" just because they are incarcerated.

A finding of fault in this context requires evidence that the plaintiff intended to "thwart" the judicial proceedings or had a "reckless disregard" for the effect that his conduct would have on the case. *Wu*, 420 F.3d at 643. Here, Schafer did not violate any court orders while pursuing his claims against the defendants. That distinguishes him from the plaintiff in *Harmon*, who was found to have acted in bad faith because he did not respond to court-ordered discovery requests for several months. 110 F.3d at 368. In *Mulbah*, on the other hand, the plaintiff was found not to have acted in bad faith

because the plaintiff had neither violated a court order nor failed to respond to defense counsel's requests. 261 F.3d at 592. Neither had Schafer, but he was not entirely without fault. He did not refile his complaint within six months and did not ask for an extension to refile until long after the deadline had passed. Schafer also cites no efforts on his part to meet the six-month deadline and does not explain how his incarceration impeded such efforts. Although his conduct does not establish bad faith, it nevertheless shows willfulness and fault in that he was at best extremely dilatory in not pursuing his claim, which indicates an intention to let his case lapse. We therefore conclude that this factor supports the district court's finding that Schafer's conduct amounted to a failure to prosecute his claim.

### 2.        *The second factor: prejudice to the defendants*

In its order dismissing the complaints of both Schafer and Andrea, the district court concluded that the pendency of the litigation had, and would continue to have, "an adverse impact" on the defendants' creditworthiness. It did not, however, explain whether or to what degree such prejudice was attributable to the pendency of *Schafer's* lawsuit (which had been inactive since October of 2006 when his complaint was dismissed without prejudice), as compared to the pendency of *Andrea's* lawsuit (which remained active, without interruption).

The key to finding prejudice in a dismissal for lack of prosecution is whether the defendants "waste[d] time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide." *Harmon*, 110 F.3d at 368. No evidence of these factors exists with respect to Schafer's complaint. Accordingly, none of the prejudice that the district court found can fairly be attributed to his lawsuit.

From the time when the initial complaint was filed to the time when Schafer's complaint was finally dismissed with prejudice, the defendants' only efforts in response to the complaint were to (1) file an answer and an amended answer, (2) attend two scheduling conferences with the district court, and (3) submit a two-and-a-half-page report requesting an expedited litigation track and addressing other case-management matters. None of those efforts were necessitated by any lack of cooperation by Schafer. They are instead typical steps in the early stages of litigation and are to be expected when one is served with a complaint.

Moreover, all of the foregoing occurred during the relatively short period of time between March and October of 2006. And none of the defendants' filings after that time related to Schafer's lawsuit because his complaint was dismissed in October of 2006. Notably, even the defendants' final motion to dismiss, filed *after* the expiration of Schafer's refiling deadline, did not seek a final dismissal with prejudice of Schafer's complaint. It sought such dismissal only with regard to Andrea's complaint.

If such efforts on the part of the defendants are alone sufficient to establish prejudice, then every defendant who answers a complaint and responds even minimally to a lawsuit would be able to claim prejudice. That result would defy common sense. Accordingly, the prejudice prong of the analysis weighs *against* finding that the dismissal of Schafer's complaint was appropriate.

### 3.        *The third factor: prior notice*

Schafer was indisputably on notice from the court that if he did not refile his complaint within six months, the complaint would be dismissed with prejudice. He could have found another attorney to represent him or, if he was unable to do so, he could have simply refiled his original complaint as a pro se litigant, without his children listed as coplaintiffs. Nothing in the record indicates that the district court abused its discretion in determining that six months was an appropriate period of time to allow for refiling. This third factor, which is a "key consideration" in the analysis, *see Stough*, 138 F.3d at 615, therefore supports the district court's dismissal.

### 4.        *The fourth factor: consideration of lesser sanctions*

The district court first dismissed Schafer's complaint *without* prejudice before later dismissing it *with* prejudice, thus giving him a second chance to file his complaint in compliance with the district court's ruling (apparently to resolve an ethical concern about his attorney also representing Andrea). This factor therefore weighs in favor of finding that the district court acted within its discretion in dismissing the complaint.

### 5.        *Conclusion*

Three factors (fault, prior notice, and lesser sanctions) weigh in favor of affirming the district court's decision and one factor (prejudice) weighs against affirming that decision. Although the record contains little, if any, evidence that the defendants were actually prejudiced by Schafer's failure to prosecute his claims, that factor is outweighed by (1) his failure to either refile his complaint or timely ask for an extension, (2) the six months' notice that the court gave him before dismissing his complaint with prejudice, and (3) the court's prior imposition of a lesser sanction (i.e., dismissal without prejudice). We therefore conclude that the district court did not abuse its discretion in dismissing Schafer's complaint.

## D.        Dismissal of Andrea's complaint

The district court also dismissed Andrea's complaint with prejudice for failure to prosecute. Its reasons are set forth in the court's order and in the defendants' motion to dismiss, which the court incorporated into its order of dismissal. On appeal, Andrea challenges the dismissal on the grounds that she was merely late for her deposition, that her counsel did not receive a bill for defense costs related to the December 2006 deposition, and that she could not afford to pay defense counsel's bill, which was in the amount of $1,000.

### 1.        *The first factor: willfulness, bad faith, or fault*

In dismissing Andrea's action, the district court cited her failure to comply with various court orders. Those orders had directed Andrea to (1) appear for the December 2006 deposition, (2) either accept or reject by a certain date the defendants' statement of expenses arising from her failure to appear for that deposition, (3) reimburse the defendants for those costs, and (4) reschedule the deposition.

The court found that Royer had not made a good faith effort to comply with the court's orders, citing as an example his failure to contact defense counsel for a statement of the December deposition expenses after allegedly not receiving such a statement. And Royer had asked for deadline extensions in December of 2006 and in April of 2007 based on the claim that he was moving his office, even though his mailing address did not change during the course of the proceedings below. He also repeatedly failed to file electronically, in contravention of several court orders and the local court rules, and agreed to schedule Andrea's deposition on December 28, 2006 on the condition that it last for only one hour so that he could attend a CLE seminar.

The district court further called Andrea to task for failing to attend the December deposition, inform her attorney of how to contact her, and pay the expenses that defense counsel incurred in connection with the December deposition. On appeal, Andrea does not dispute these facts. Moreover, she has never provided an explanation for why, even if she could not afford to pay the defense counsel's expenses, she did not at least comply with the district court's order to either accept or reject the claimed expenses by the date specified.

Royer's conduct calls into question the manner in which he handled Andrea's case and supports the district court's conclusion that he repeatedly acted with disregard for the effect of his

conduct on the judicial proceedings. *See Wu*, 420 F.3d at 643. Indeed, Royer's performance was so deficient that he created the risk that his clients would be penalized for his conduct. His performance has not improved on appeal. The portion of the brief relating to Andrea's appeal contains only two brief paragraphs reciting the factual assertions that he used to oppose the defendants' final motion to dismiss. And the entirety of his appellate argument on behalf of Schafer is that the district court erred in dismissing the complaint on two grounds that were clearly not the basis for the court's decision, as noted in Part II.C. above. Particularly troubling is the fact that Royer accepted representation of clients who likely had a conflict of interest and, even more so, the fact that he continues to this day to represent all of the plaintiffs even after the district court instructed him to choose to represent either Schafer or Andrea. The foregoing conduct casts a shadow on the credibility of Royer and, by extension, his clients and their claims.

As previously noted, this court is reluctant to affirm the dismissal of a case in order to discipline an "errant attorney" because doing so "deprives the client of his day in court." *Harmon*, 110 F.3d at 367 (internal quotation marks omitted). But here the district court also faulted Andrea for her own conduct. At one point the court characterized her attention to prosecuting the action as "nearly imperceptible." Andrea argues that she was merely late for the December 2006 deposition and that she got lost on her way there. As a result, the district court ordered her to submit to a deposition at a later time or face dismissal of the suit. But she again did not comply for reasons that remain unexplained. Even more problematic is the fact that she did not keep her attorney informed of her whereabouts or how to reach her while the litigation was actively ongoing.

Although Royer's deficient performance likely impeded Andrea's ability to prosecute her lawsuit, the district court found that Andrea was at least partially to blame. The record contains no evidence showing that the district court's findings regarding Andrea's own conduct were clearly erroneous. We therefore conclude that Andrea's actions, together with those of her attorney, support the district court's decision to dismiss her complaint.

### 2.    *The second factor: prejudice to the defendants*

Andrea does not dispute the district court's finding that the pendency of the litigation had and would continue to have "an adverse impact on [the defendants'] credit-worthiness." In addition, the record shows that the defendants expended time, money, and effort in pursuing cooperation from Andrea that she was legally obligated to provide under court order—for example, in attempting to take Andrea's deposition in December of 2006 pursuant to the court's November 17, 2006 order. *See id*. Thus the second factor weighs in favor of finding that the district court did not abuse its discretion in dismissing Andrea's complaint.

### 3.    *The third factor: prior notice*

The district court indisputably put Andrea on notice that continued noncompliance with the court's orders would result in dismissal of her suit. In its March 6, 2007 order, the court gave her "one more chance" to demonstrate her commitment to prosecuting the case. It also explicitly stated that a failure of Andrea to appear for a deposition by April 20, 2007 would result in a dismissal of the case. Accordingly, the third factor, which this court has identified as a "key consideration" in the analysis, *see Stough*, 138 F.3d at 615, also weighs in favor of finding that the district court's dismissal was not an abuse of discretion.

### 4.    *The fourth factor: consideration of lesser sanctions*

In warning Andrea that her action would be dismissed if she failed to reschedule the deposition by the specified date, the district court also ordered her to pay the costs that defense counsel incurred in connection with her nonappearance at the December 2006 deposition. This indicates that the court considered less drastic sanctions than dismissal for Andrea's dilatory

conduct. Yet she failed to comply with the court's order imposing the lesser sanction. Thus the fourth factor also weighs in favor of concluding that the district court did not abuse its discretion in dismissing the action.

### 5.    *Conclusion*

In sum, each of the four factors weighs in favor of concluding that the district court did not abuse its discretion when it dismissed Andrea's lawsuit with prejudice for failure to prosecute. We therefore affirm the district court's judgment with regard to her complaint.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.