**NOT RECOMMENDED FOR PUBLICATION**
File Name: 11a0529n.06

No. 09-4562

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Aug 02, 2011*

LEONARD GREEN, Clerk

DELORES JANE KOVACIC, et al.,      )
                                      )

     Plaintiffs-Appellants,      )
                                        )

v.                                     )    ON APPEAL FROM THE UNITED
                                        )    STATES DISTRICT COURT FOR
                                        )    THE NORTHERN DISTRICT OF

TYCO VALVES & CONTROLS, LP, et al.,   )    OHIO
                                        )

     Defendants-Appellees.        )

---

Before: BOGGS and SILER, Circuit Judges; VAN TATENHOVE, District Judge[*].

**SILER**, Circuit Judge. The plaintiffs appeal the district court's dismissal with prejudice of their product liability case under Federal Rule of Civil Procedure 41(b), for failure to prosecute and failure to comply with the court's rules and orders. For the following reasons, we affirm.

**I.**

In 2001, a steam engine owned and operated by Clifford Kovacic and his son, William Kovacic, exploded at the Medina County, Ohio fairgrounds, killing five people and injuring forty-seven. Clifford and William were among the deceased. In 2006, family members Delores Kovacic and Elizabeth Kovacic sued Tyco, the manufacturer of a safety valve within the steam engine. The Kovacics alleged that the safety valve was "defective and unreasonably dangerous in its design, manufacture, representations, instructions or warnings," and caused the fatal explosion.

---

[*]The Honorable Gregory F. Van Tatenhove, United States District Court for the Eastern District of Kentucky, sitting by designation.

No. 09-4562
*Kovacic et al. v. Tyco Valves & Controls, LP, et al.*

For several years, there were delays in the discovery process primarily based on issues surrounding the destructive testing of the steam engine's safety valve.[1] After both parties requested and received multiple extensions of time for discovery, the court set trial for June 2009. The parties jointly moved for a further extension of discovery deadlines and to postpone trial until August 2009 or later. After conferencing with the parties to find a mutually agreeable trial date, the court set the trial for December 8, 2009. The court "would have preferred to conduct the trial in the summer months," but postponed trial "in part to accommodate plaintiffs' counsel's work and travel schedule." The court then issued a trial order establishing deadlines for the parties' pretrial obligations.

On October 13, 2009, Tyco timely filed a *Daubert* motion to exclude the Kovacics' liability expert, Michael Clemens. Pursuant to the deadlines in the trial order, the Kovacics' response was due on October 20, 2009. Three weeks after the deadline, however, the plaintiffs had not filed a response. On November 6, 2009, Tyco filed a motion for leave to file a motion for summary judgment instanter, arguing that Clemens lacked competent testimony regarding causation. The Kovacics never filed a response to the motion for leave. They also failed to file a witness and exhibit list as requested by the trial order. As of November 10, the docket reflected that there had been no activity by the plaintiffs since July 31, 2009.

---

[1] The destructive disassembly of the safety valve revealed no manufacturing defects. The Kovacics' claim, therefore, proceeded solely on the basis that the defective design of the safety valve was a contributing cause of the accident.

Because of the unopposed *Daubert* motion and the requirement of an expert witness for the Kovacics' case to proceed, the court *sua sponte* scheduled a telephone status conference on November 10. Counsel for both parties discussed by telephone the circumstances of the Kovacics' failure to file a timely witness list, exhibit list, and *Daubert* response. Plaintiffs' counsel explained that he had been out of the country during the latter weeks of October, and when he returned on October 27 to find the *Daubert* motion pending, he contacted defense counsel the same day to schedule Clemens's deposition. He stated that the parties spoke during the first week of November and agreed upon alternative dates to depose Clemens. He also stated that, in light of the impending deposition, he did not think a response to the *Daubert* motion was necessary. He argued that his failure to file a response should be excused, because he understood his discussions with defense counsel to constitute an implicit waiver by the defendant of its obligation to adhere to the court-imposed deadlines. He also stated that he merely overlooked the deadline for filing witness and exhibit lists.

Based on this discussion, the district court ordered the Kovacics to file a *Daubert* response, witness list, and exhibit list by the end of the following day, and ordered Tyco to provide a written explanation of the parties' communications regarding expert depositions. The court noted that its decision to allow the plaintiffs an opportunity to file these documents did not excuse their failure to comply with the trial order.

Both parties complied with the court's order. On November 11, 2009, the Kovacics filed a response in opposition to Tyco's *Daubert* motion, a witness list, and an exhibit list. Tyco reported that it did not intend to waive the right to challenge the admissibility of Clemens's testimony. After

reviewing the parties' submissions, the court ordered Tyco to file a reply in support of its *Daubert* motion on or before November 16. The court instructed it to address the nature and extent of the correspondence between the attorneys regarding all expert reports and depositions. Tyco timely filed this reply, and stated that it never discussed the substantive basis of the expert's opinions with plaintiffs' counsel.

Meanwhile, November 10 was the deadline for filing a proposed voir dire, trial brief, and other motions in limine. Tyco timely filed these documents and motions. The Kovacics did not file anything on November 10, and never filed a proposed voir dire or trial brief.

On November 17, the court dismissed the Kovacics' case with prejudice pursuant to Fed. R. Civ. P. 41(b). First, it granted Tyco's *Daubert* motion and excluded Clemens's expert testimony from trial. The court treated Tyco's motion as unopposed because of the Kovacics' failure to file a timely response. It held that Clemens's expert report of July 10, 2007 "patently" failed to comply with Fed. R. Civ. P. 26(a)(2)(B), which states that an expert report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor." Clemens's report stated only that a safety valve "can have" a design or manufacturing defect, and failed to disclose the basis of his opinions. The court found that this cursory report made it impossible to assess the reliability of his opinions and precluded Clemens from offering expert testimony at trial.

In reaching this conclusion, the court noted that even if it excused plaintiffs' untimeliness, their response in opposition failed to supplement the expert report or bring it into conformity with Fed. R. Civ. P. 26. Although plaintiffs' counsel asserted that taking the expert's deposition would cure any deficiencies in his report, Tyco had attempted to schedule his deposition for months, and

the court determined that conducting such an important deposition one week before trial would be "unfair."

Second, the court granted Tyco's motion in limine to preclude the Kovacics from calling any witnesses or presenting any exhibits. The court cited its express instructions in the trial order that "[n]o witness will be permitted to testify at trial if his or her name is not provided to opposing counsel" by November 3, 2009. Plaintiffs' counsel did not file these lists until a week after the deadline, and only upon prompting by the court.

Finally, "[i]n light of the above rulings," the court held that the Kovacics had failed to prosecute their case. First, it found that counsel consciously chose not to oppose the *Daubert* motion and could not articulate any reason for his failure to file witness and exhibit lists. Moreover, he never sought an extension of time to file these documents. Second, the court determined that Tyco was prejudiced by the untimeliness and would be forced to prepare for trial without a complete understanding of the nature of the key expert's opinions. Third, the court pointed out that it initiated the telephone conference to discuss the missed deadlines *sua sponte*, and that, even after the conference, plaintiffs' counsel continued to miss filing deadlines for their proposed voir dire and trial brief. Fourth, the court found less drastic sanctions inappropriate because further delay would "undermine the effect of the Court's Orders and the Civil Rules." Because the "judicial system depends on these procedural rules to allow the Court to facilitate fair and just resolution of disputes submitted to the Court," it dismissed the case with prejudice pursuant to Rule 41(b).

## II.

### A.

We review a district court's decision to dismiss a case under Rule 41(b) for abuse of discretion. *Great Lakes Exploration Group, LLC v. Unidentified Wreckage*, 522 F.3d 682, 687 (6th Cir. 2008). Thus, we will reverse the court's ruling "only if we have a definite and firm conviction that it has committed a clear error of judgment." *Id.* (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 632 (1962)). Nevertheless, the "dismissal of a claim for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the plaintiff." *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (internal quotation marks omitted).

**B.**

We review four non-dispositive factors in evaluating the district court's dismissal for failure to prosecute:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002).

In *Link*, the Supreme Court concluded that the district court had not abused its discretion when it dismissed the plaintiff's complaint for failure to prosecute. 370 U.S. at 633. The Court stated that there is "certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." *Id.* "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent." *Id.* at 634.

- 6 -

The *Link* principle remains valid, but "we have increasingly emphasized directly sanctioning the delinquent lawyer rather than an innocent client." *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1095 (6th Cir. 1994). Accordingly, we apply the factors "more stringently in cases where the plaintiff's attorney's conduct is responsible for the dismissal." *Harmon v. CSX Transp. Inc.*, 110 F.3d 364, 367 (6th Cir. 1997).

### 1. Willfulness, bad faith, or fault

The first factor is whether the party's conduct is due to willfulness, bad faith, or fault. *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999). To support such a finding, the plaintiff's conduct "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Wu*, 420 F.3d at 643. A plaintiff that does not act in bad faith, but "nevertheless shows willfulness and fault in that he was at best extremely dilatory in not pursuing his claim," indicates an intention to allow his case to lapse. *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 739 (6th Cir. 2008).

"[I]t is presumed that dismissal is not an abuse of discretion if the party has the ability to comply with a discovery order but does not." *Reyes*, 307 F.3d at 458. However, we have distinguished an "attorney's failure to appear on the record on repeated occasions under circumstances not deemed acceptable to the court" from "mere dilatory conduct involving failure to file a specified document." *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 592 (quoting *Coston v. Detroit Edison Co.*, 789 F.2d 377, 379 (6th Cir. 1986)). We have considered the failure to appear as a more egregious omission than the failure to file a document. *Id.*

Here, counsel's conduct was "extremely dilatory." *Schafer*, 529 F.3d at 739. As the district court noted, plaintiffs' counsel "admitted that he consciously chose not to oppose" the *Daubert* motion, "opting instead to pursue the issue outside of the context of the Court's Trial Order without informing the Court or seeking leave." Counsel "could not articulate any reason for his failure to file witness and exhibit lists," even though these deadlines were set well in advance of his travel abroad. *See Link*, 370 U.S. at 633 ("It was certainly within the bounds of permissible discretion for the court to conclude that the telephone excuse offered by petitioner's counsel was inadequate."). He also continued to miss pretrial filing deadlines, even after the court initiated a remedial conference. These actions indicate both fault and willfulness on the part of Kovacics' counsel.

Counsel's dilatory conduct contrasts with other cases in which we have found an abuse of discretion. For example, we reversed the district court in *Wu* because the plaintiff's "lack of action was the result of an innocent misunderstanding caused by the district court's failure to properly communicate its intentions to the parties." 420 F.3d at 644-45. In *Freeland v. Amigo*, 103 F.3d 1271 (6th Cir. 1997), we held it was an abuse of discretion to dismiss a case where the court's pretrial order explicitly allowed the parties to waive the discovery cutoff date by agreement, without "supervision or intervention by the Court." *Id.* at 1277.

These mitigating factors are not present in the instant case. Accordingly, this factor weighs in favor of affirming the district court.

### 2. Prejudice

The second factor is whether the adversary was prejudiced by the dismissed party's conduct. *Knoll*, 176 F.3d at 363. A defendant is prejudiced by the plaintiff's conduct where the defendant

"wastes time, money and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide." *Harmon*, 110 F.3d at 368.

The district court found that Tyco was prejudiced by the Kovacics' untimeliness, because it "forced [the defendants] to prepare to defend their case at trial without a complete understanding of the nature of the plaintiffs' key liability expert witness' opinions and the basis thereof." Clemens's report failed to provide Tyco with "the basis and reasons" for his opinions, which are required by Fed. R. Civ. P. 26(a). Moreover, "conducting the key deposition one week before trial is unfair, especially given the deadlines established by the Trial Order in June and [Tyco's] repeated efforts to schedule the deposition prior to October, efforts to which plaintiffs' counsel largely did not even respond."

In *Mulbah*, we reversed the district court's Rule 41(b) dismissal in part because the defendants were "equally dilatory" in missing discovery deadlines. 261 F.3d at 592. Specifically, the defendants failed to file any discovery requests "at all," and filed their answer to the complaint more than 30 days after an extension agreed to by the parties. *Id.* Additionally, the missed deadlines were "more likely to hurt" the plaintiff than the defendants. *Id.*

Here, as the district court explained, Tyco spent time and effort preparing its *Daubert* motion and pretrial documents, attempting to schedule Clemens's deposition, and continuously complying with court-imposed deadlines. Accordingly, this factor weighs in favor of affirming the district court's dismissal.

**3.     Prior notice**

Although the district court has the power to dismiss a claim as the first and only sanction, *Link*, 370 U.S. at 631-33, "routine language in a standard order, warning counsel of possible dismissal as a sanction for failure to comply with any of the provisions of the order, is not necessarily sufficient prior notice to immediately warrant the extreme sanction of dismissal." *Freeland*, 103 F.3d at 1279. "This court has repeatedly reversed district courts for dismissing cases because litigants failed to appear or to comply with pretrial orders when the district courts did not put the derelict parties on notice that further noncompliance would result in dismissal." *Wu*, 420 F.3d at 644 (internal quotation marks omitted).

In *Reyes*, we affirmed the district court's dismissal where the court "took the unusual step of calling" plaintiff's counsel to notify him that he had missed a filing deadline by several weeks and allowed him to file a late response. 307 F.3d at 457. The plaintiff failed to file this late response, and we considered this "disregard of the graciousness of the district court" as contumacious conduct. *Id.* Additionally, although the court did not expressly provide prior warning of dismissal, we held that the government's filing of a motion to strike the plaintiff's claim provided some notice. *Id.* at 458; *see also Harmon*, 110 F.3d at 368 (holding that the plaintiff could not complain of lack of notice where the defendant filed a motion to dismiss).

The district court provided plaintiffs' counsel with some notice that it was contemplating dismissal. It included a warning in its trial order that the failure to timely file witness and exhibit lists would result in exclusion of witnesses from trial. After plaintiffs' counsel did not file any documents for three months and missed several pretrial deadlines, the court initiated a telephone status conference to allow counsel to explain. During this conference, the court expressly noted that

its decision to allow the plaintiffs an opportunity to file the untimely *Daubert* response, witness list, and exhibit list "did *not* excuse the failure to comply" with the court's trial order. Notwithstanding this admonition, plaintiffs' counsel missed the November 10 filing deadline for other pretrial documents and motions, and failed to file a proposed voir dire or trial brief.

Because counsel was on notice that the court was contemplating sanctions and nevertheless continued to miss pretrial filing deadlines, this factor weighs in favor of affirming.

### 4. Less drastic sanctions

The fourth factor is whether the district court "imposed or considered" less drastic sanctions before ordering dismissal. *Knoll*, 420 F.3d at 643. "We have never held that a district court is without power to dismiss a complaint, as the first and only sanction, solely on the basis of the plaintiff's counsel's neglect, and, indeed, any such rule would conflict with *Link*." *Harmon*, 110 F.3d at 368 (internal citations omitted).

However, the district court abuses its discretion if it dismisses a case under Rule 41(b) "mechanically." *Freeland*, 103 F.3d at 1279. "Such caution is necessary because where the district court has not manifested consideration of less drastic sanctions, it is more difficult, although not impossible, for this court to conclude that the district court exercised its discretion with appropriate forethought." *Schafer*, 529 F.3d at 738 (citing *Harmon*, 110 F.3d at 368-69). Thus, we have found an abuse of discretion where the district court did not first impose alternative sanctions on plaintiff's counsel, such as "levying a fine, barring him from participating in oral argument, or any other disciplinary action." *Mulbah*, 261 F.3d at 593; *see also Wu*, 420 F.3d at 644 ("[D]ismissal is appropriate only if . . . no alternative sanction would protect the integrity of the pretrial process.").

The district court appears to have considered less drastic sanctions in this case. First, the court called a status conference *sua sponte*, providing counsel with an opportunity to explain the missed deadlines. The court then allowed the Kovacics to file an untimely *Daubert* response. After reviewing the parties' submissions, the court held that "less drastic sanctions are not appropriate under the particular circumstances of this case." Specifically, the Kovacics failed to "satisfy the requirements for introducing expert testimony on the key issue of liability and then failed to oppose the Defendants' *Daubert* motion to that effect." The court noted that trial had already been pending for three years, and further delaying it to allow the parties to depose Clemens "would undermine the effect of the Court's Orders and the Civil Rules." This case is distinguishable from *Mulbah*, where the court never "punished or even admonished Plaintiff or his counsel for this late filing or warned them that further noncompliance would result in the imposition of a sanction as harsh as the one imposed." 261 F.3d at 593. Here, by contrast, the court called a conference and indicated its concerns with counsel's failure to meet pretrial deadlines. Even after this admonition, counsel "continued to miss filing deadlines."

The dismissal of the Kovacics' case was a harsh sanction, and the court could have imposed alternative sanctions on the attorney rather than dismissing the case. Indeed, "it is difficult to define the quantity or quality of the misconduct which may justify dismissal with prejudice as the first and only sanction." *Harmon*, 110 F.3d at 368. However, "[t]his difficulty is no doubt part of the reason that we review a district court's judgment in such cases only for an abuse of discretion." *Id.* The court's order, as well as its actions, indicate that it did not dismiss the case "mechanically," but only after considering alternatives.

- 12 -

No. 09-4562
*Kovacic et al. v. Tyco Valves & Controls, LP, et al.*

**AFFIRMED**.