**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 15a0566n.06

Case No. 13-5866

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Aug 12, 2015

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| ANTONIO L. SAULSBERRY, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| JAMES M. HOLLOWAY, Warden, | ) | TENNESSEE |
| | ) | |
| Respondent-Appellee. | ) | |

BEFORE: COOK and STRANCH, Circuit Judges; MURPHY, District Judge.[*]

COOK, Circuit Judge. Appointed counsel for Antonio Saulsberry, a prisoner seeking habeas relief, mistakenly informed the district court that Saulsberry exhausted his state-court remedies. Counsel then ignored the district court's order to proceed on the unexhausted petition. Four days after the deadline for filing the motion to proceed, the district court dismissed Saulsberry's petition. We REVERSE the district court's judgment and REMAND for consideration of the petition on the merits.

I.

Using information provided by Saulsberry, four individuals robbed a TGI Friday's restaurant and killed the restaurant manager. A Tennessee jury initially convicted Saulsberry of

---

[*]The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

first-degree premeditated murder, but the appellate court found the evidence insufficient and remanded for a new trial on the alternative felony-murder charge. Saulsberry moved to dismiss the felony-murder prosecution under the Double Jeopardy Clause. The state trial court denied his motion, and the state appellate court affirmed. Before the second trial began, however, Saulsberry sought habeas relief on his double-jeopardy claim and received appointed counsel.

Saulsberry's habeas counsel moved for an order holding the petition in abeyance during the felony-murder prosecution and its eventual appeal. The district court granted the motion and instructed Saulsberry to file a motion to proceed after he fully exhausted his state remedies. The court held the petition in abeyance from May 2009 until May 2013, requesting status reports intermittently.

In response to the district court's 2013 status-report request, the warden noted that Saulsberry, who by then had been convicted of felony murder, had exhausted his direct appeal but continued to pursue state post-conviction relief. Saulsberry's post-conviction hearing, the warden informed the court, was scheduled for April 26, 2013. On that date, Saulsberry's habeas counsel filed a status report stating that Saulsberry's "state court remedies have been exhausted within the highest state court in Tennessee." The status report did not mention Saulsberry's state post-conviction proceedings and in particular failed to note that the state court rescheduled the April 26 hearing to a later date. This erroneous status report was the last document Saulsberry's habeas counsel filed in this case.

Concluding from the incorrect report that Saulsberry "exhausted his state-court remedies," the district court lifted the stay and ordered Saulsberry to file a motion to proceed within thirty days, up to and including June 14, cautioning that "[f]ailure to file the motion to proceed within the period will result in dismissal of the petition." Heeding the warning,

Saulsberry promptly filed a pro se motion informing the court that his post-conviction hearing was delayed and requesting that the court continue to hold the unexhausted petition in abeyance.

Two days later, the district court ordered "*Petitioner's counsel-of-record* to file a notice clarifying the status of Petitioner's case and whether his state-court remedies have been exhausted." The court gave counsel one week to file this notice, but Saulsberry's counsel did nothing.

Nine days before the June 14 deadline expired, the court sua sponte struck Saulsberry's "improvidently filed" pro se motion, noting that Saulsberry "is a represented party," and reiterating that failure to move to proceed by June 14 would result in dismissal.

Still, counsel filed nothing. Four days after the lapsed deadline, the district court dismissed Saulsberry's petition, explaining that "the deadline for filing the Motion to Proceed has expired and Petitioner has not filed the motion." The court gave no other reason.

Although the district court denied a certificate of appealability, this court permitted an appeal "on the issue of whether the district court's dismissal of Saulsberry's petition was improper in light of the uncertainty of his exhaustion of state remedies and appointed counsel's failure to respond to the court's orders." We appointed appellate counsel.

## II.

The district court dismissed the petition under its broad authority to dismiss cases for failure to prosecute. We review such dismissals under an abuse-of-discretion standard. *Carpenter v. City of Flint*, 723 F.3d 700, 703–04 (6th Cir. 2013).

III.

To evaluate dismissals for failure to prosecute, we apply a simple four-factor test that asks:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal of the action.

*Id*. at 704 (quoting *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 589 (6th Cir. 2001)). In applying this test, we recognize that dismissal "is a harsh sanction which the court should order only in extreme situations." *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008) (quoting *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (internal quotation marks omitted)).

Under the first factor, we find bad faith, willfulness, or fault when the record clearly evinces a party's "delay or contumacious conduct." *Carpenter*, 723 F.3d at 704 (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997) (internal quotation marks omitted)). Here, the district court relied on Saulsberry's failure to file the motion-to-proceed in dismissing the petition. Though the warden characterizes this oversight as contumacious, our cases instruct that failure to file a specified document constitutes "mere dilatory conduct," not contumacious conduct. *Carpenter*, 723 F.3d at 705 (quoting *Coston v. Detroit Edison Co.*, 789 F.2d 377, 379 (6th Cir. 1986)); *see also Mulbah*, 261 F.3d at 592 (concluding that the plaintiff had not acted in bad faith by filing a belated response to a motion to dismiss). Contumacious conduct involves more egregious behavior than Saulsberry's, such as missing court appearances or failing to participate in discovery. *See, e.g., Bass v. Jostens, Inc.*, 71 F.3d 237, 242–43 (6th Cir. 1995).

To bolster his contumacious-conduct argument, the warden identifies five additional violations of court orders: Saulsberry (1) filed a pro se document in 2013 despite the court's 2008 admonishment to cease filing pro se documents; (2) neglected to file a motion to proceed following the conclusion of his state direct review but before his state post-conviction proceedings commenced; (3) never filed a 2010 status report; (4) filed his 2013 status report twenty-three days late; and (5) ignored the district court order's order seeking clarification of the status of post-conviction proceedings.

The warden correctly attributes the first violation to Saulsberry personally. Saulsberry's pro se motion, however, shows attempted compliance with the court's order to exhaust state remedies, not bad faith or willfulness. Counsel's status report misinformed the court about Saulsberry's state post-conviction proceedings, and Saulsberry sought to correct this misinformation. To the extent his motion violated the court's directive not to file pro se documents, the court properly imposed alternative sanctions by striking the filing.

The second alleged violation was no violation at all. The warden argues that Saulsberry should have filed a motion to proceed "during the interval between direct review and post-conviction" proceedings in state court. But the district court instructed Saulsberry to file a motion to proceed once he "fully exhausted" state remedies and to attach "the complete state court record of Saulsberry's original case *and the subsequent state petitions for collateral relief and rulings on those petitions*." In short, the district court instructed Saulsberry to complete state post-conviction proceedings, and Saulsberry complied with this order.

The third, fourth, and fifth violations, like the failure to file the motion to proceed, amount to mere dilatory conduct, not contumacious conduct. *See Carpenter*, 723 F.3d at 705.

The warden's claim that Saulsberry caused protracted delay fares no better. According to the warden, Saulsberry's missing or tardy status reports caused a four-year delay because the district court did not know Saulsberry's status from 2009 to 2013. This argument finds no support in the record. In his 2010 status report, the warden noted that a motion for a new trial was pending in state court. In 2011, both parties informed the court that Saulsberry's application for review in the Tennessee Supreme Court was still pending. And in April 2013, the court knew that Saulsberry's state post-conviction proceedings had not yet concluded. Until April 2013, therefore, the parties kept the district court accurately informed as to Saulsberry's status. During the four-year "delay" claimed by the warden, Saulsberry pursued his claims in state court, and the district court properly held the unexhausted petition in abeyance.

The delay in this case actually numbers in days, not years. The court dismissed Saulsberry's petition four days after he missed the June 14 motion-to-proceed deadline. Were we to include the delay caused by counsel's failure to clarify Saulsberry's status, the pre-dismissal delay would total just eighteen days—from May 31 until June 18. (*See* R. 34, Order (directing counsel to file notice of clarification by May 31).)

Under the second factor—prejudice to the opposing party—the warden offers little support for the dismissal. Prejudice occurs when "the defendant is 'required to waste time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide.'" *Carpenter*, 723 F.3d at 707 (alteration in original) (quoting *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997)). After the district court stayed the petition in 2009, the warden filed "a notice of appearance, a motion to withdraw counsel, and three status reports." None of these filings relate to Saulsberry's noncompliance—they were routine requirements. In fact, the warden did not file a single document after the court ordered Saulsberry to file a motion

to proceed. The warden's sole action following Saulsberry's noncompliance was an attempt to "contact the petitioner's counsel to inquire about the status of state proceedings." Isolated efforts to contact the delinquent party do not constitute prejudice. *See Carpenter*, 723 F.3d at 707–08 (finding no prejudice even when plaintiff's noncompliance forced defendants to file two three-page motions to strike, contact plaintiff's counsel about a stipulation, and respond to a show-cause order). The warden has suffered no prejudice.

Of the four factors, only the third—whether the court warned Saulsberry that dilatory conduct could lead to dismissal—favors the warden. When a party receives a targeted warning that its failure to prosecute will lead to dismissal, but nonetheless persists in its noncompliance, this factor favors affirming the resulting dismissal. *Kovacic v. Tyco Valves & Controls, LP*, 433 F. App'x 376, 382 (6th Cir. 2011) (upholding dismissal when the district court convened a telephone conference to discuss the party's outstanding discovery obligations and the party continued to ignore those obligations). The district court explicitly warned Saulsberry that "[f]ailure to file the motion to proceed within the period will result in dismissal of the petition." While this warning weighs against finding an abuse of discretion, the circumstances lessen its import. Saulsberry in fact heeded the court's dismissal warning by immediately filing a pro se motion. The district court struck his pro se pleading with nine days left to file the motion to proceed. With nine days to secure new counsel, Saulsberry had no choice but to rely on his then-delinquent counsel to file the motion. *Cf. Schafer*, 529 F.3d at 740 (finding no abuse of discretion when the court warned the plaintiff that it would dismiss the case unless he refiled the complaint within six months, giving him ample time to find another attorney or refile his complaint pro se). Given Saulsberry's personal effort to prevent dismissal after receiving the court's warning, this factor weighs only slightly in favor of the warden.

Finally, the district court never considered alternative sanctions before dismissing the petition. When alternative sanctions would protect the integrity of the trial process, the court should impose those sanctions instead of dismissing the case. *Carpenter*, 723 F.3d at 709. Possibilities include "levying a fine, barring [counsel] from participating in oral argument, or any other disciplinary action, even dismissal without prejudice." *Id.* (quoting *Mulbah*, 261 F.3d at 593) (internal quotation marks omitted).

Three factors weigh in favor of reversing the dismissal and one weighs—slightly—in favor of affirming it. Facing the same lineup of factors as in *Carpenter*, 723 F.3d at 710, we find that the court abused its discretion in dismissing Saulsberry's petition as a sanction for his counsel's failures.

IV.

We REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.