NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0585n.06

No. 09-1235

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LORRAINE HAVARD, as Guardian of
CHELSIE BARKER, a minor

      Plaintiffs-Appellees,

v.

WAYNE COUNTY; WAYNE COUNTY JAIL,

      Defendants,

JOHN DOE; JANE DOE, et al.

      Defendants,

and

DEPUTY PUNTUER, DEPUTY GRIFFIN,
C. FRAZIER, R.N., jointly and severally,

      Defendants-Appellants.

_____/

**FILED**

*Aug 19, 2011*

LEONARD GREEN, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE: BATCHELDER, Chief Circuit Judge, SUHRHEINRICH and GRIFFIN, Circuit
Judges.

SUHRHEINRICH, Circuit Judge: In this § 1983 action, Chelsie Baker, a minor, through
her guardian Lorraine Havard, claims that three Wayne County Jail employees—Deputy Puntuer,
Deputy Griffin, and C. Frazier, a nurse (collectively "Defendants")—were deliberately indifferent
to her serious medical needs after her birth in the Wayne County Jail. Defendants moved to dismiss
on the grounds that the complaint failed to state a constitutional claim and that they are entitled to

qualified immunity. The district court denied the motion and Defendants bring this interlocutory appeal. We AFFIRM.

## I. Background

### A. Facts

The following facts are taken from the First Amended Complaint. The complaint alleges that Chantrienes Barker, mother of Chelsie, was being involuntarily detained in the Wayne County Jail while she was pregnant. On December 2, 1998, at approximately 3:00 a.m., Barker alerted Griffin, the guard on duty, that she was having labor pains. Griffin told the jail's nursing station. The nursing station made Barker remain in her cell to wait until her pre-scheduled doctor's appointment, which was more than seven hours away. Griffin did nothing more. While she waited, Barker was experiencing contractions. At approximately 9:28 p.m. on December 2, the Wayne County Jail staff took Barker to Hutzel Hospital, where she was evaluated by a physician. There she was electronically monitored, given pain medication, and noted to be dilated to 2 centimeters. At roughly 11:28 p.m., the physician ordered that Barker be returned to the Wayne County Jail. Upon her return to jail, Barker was locked up. Neither Defendants nor anyone else checked on her, despite the fact that she was in labor.

Back in her cell, Barker experienced continued contractions. The other inmates on Barker's cell block screamed and banged on toilets and cell bars to alert Defendants that Barker required immediate medical attention. Defendants did not respond. When they eventually did, Barker told them that "the baby was coming out." Defendants ordered her to stand up, quiet down, and get dressed. She told them she could not move because the baby was "coming out." Defendants then put Barker into a wheelchair and, at approximately 1:30 a.m. on December 3, 1998, took Barker to

the nurses's station. Frazier contacted EMS, but did not perform any medical assessment or provide any care to Barker, despite the fact she was in the final stages of labor. EMS did not arrive until approximately 1:57 a.m.

As soon as EMS arrived, the EMS medical personnel realized that Barker's baby "was crowning or had already crowned," and baby Chelsie was delivered at the Wayne County Jail. EMS noted that Chelsie was not breathing, but neither EMS nor the jail had equipment to resuscitate her. Barker and Chelsie were transported back to Hutzel Hospital. Chelsie was cyanotic, with no heart rate or respirations. At the hospital, Chelsie was immediately intubated and CPR was initiated. Chelsie was later transferred to Children's Hospital of Michigan for further care. The amended complaint alleges that, as a proximate result of Defendants' deliberate indifference to Chelsie's serious medical needs, she sustained serious injuries, including severe mental retardation and cerebral palsy.

### B. Procedural History

Havard, on behalf of Chelsie, brought suit against Wayne County, the Wayne County Jail, and various jail personnel. The district court dismissed the state law claims without prejudice. In lieu of filing an answer, the Wayne County defendants, including Defendants, sought judgment on the pleadings, arguing that Chelsie Barker was a fetus when the claims allegedly accrued and was therefore not a "person" within the meaning of the Fourteenth Amendment. They also argued that the statute of limitations had expired and that the jail personnel were entitled to qualified immunity. Plaintiff filed a First Amended Complaint clarifying the facts after she received the medical and jail records. Defendants filed a renewed motion for judgment on the pleadings.

The district court denied Defendants' renewed motion in its entirety. The district court analyzed Chelsie's claims under the Fourteenth Amendment, reasoning that non-convicted persons have analogous protections to prisoners under the Due Process Clause of the Fourteenth Amendment. The court held that "when the injuries allegedly occurred, the minor child Chelsie was being held in jail along with her mother and that, therefore, the state actors had a duty to protect and care for Chelsie." *Havard v. Puntuer*, 600 F. Supp.2d 845, 850 (E.D. Mich. 2009). The district court then held that Chelsie was a "person" within the Fourteenth Amendment at the time her claims accrued, namely at and after her birth. *Id.* at 854-55.

The district court held that "the complaint states a claim that Barker's injuries were sustained during the time period following her birth, while she was transported to the hospital, and that the cause of her injuries was the lack of adequate medical care during and immediately after birth." *Id.* at 855. The court concluded that the complaint adequately alleged facts to support a claim for deliberate indifference to Chelsie's serious medical needs. *Id.*

The district court rejected the statute of limitations argument on the basis of Michigan's infancy tolling statute, Mich. Comp. Laws § 600.5851. *Id.* at 856-57.

The district court also rejected Defendants' qualified immunity defense, reasoning that the complaint alleged facts that could be construed to constitute deliberate indifference to Chelsie's serious medical needs. *Id.* at 859. The district court held that a reasonable person would have known that failing to obtain medical care in that situation constituted deliberate indifference. *Id.* The court therefore rejected as "without merit" Defendants' argument that they were entitled to qualified immunity because Chelsie was a fetus at the time of their actions. *Id.* at 859-60.

## II. Analysis

On appeal Defendants claim that: (1) the complaint should be dismissed because the "unborn" are neither "citizens" nor "persons" within the meaning of the Fourteenth Amendment and 42 U.S.C. § 1983; (2) qualified immunity protects them from suit; and (3) the pleadings are insufficient to state a claim for relief under § 1983.

Under 42 U.S.C. § 1983, a right of action exists against any person acting under color of state law who subjects "any citizen of the United States or other person" to a deprivation of the rights secured by the Constitution or federal laws. To state a claim under § 1983, a plaintiff must allege that (1) a right secured by the Constitution or a federal statute has been violated; and (2) the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 does not provide any substantive rights but gives only remedies; it authorizes redress for violations of constitutional and statutory rights. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617-18 (1979).

### A. Constitutional Claim

Defendants base their argument on *Roe v. Wade*, 410 U.S. 113 (1973), claiming that Chelsie was not a "person" for purposes of 42 U.S.C. § 1983 when her injuries were sustained, and is therefore not entitled to constitutional protection.

However, *Roe v. Wade* is not dispositive here. Plaintiff alleges that Defendants failed to provide adequate medical care at the moment of Chelsie's *live* birth (an event which was clearly foreseeable, and indeed inevitable, from the time Chantrienes entered the jail) and thereafter, points at which Chelsie was certainly a "person" in the eyes of federal constitutional law. Chelsie is

therefore not barred from bringing a claim under § 1983. Whether Defendants actually had a duty to summon such care is a different question which will be addressed below.

Defendants also argue that, regardless of Chelsie's status as a fetus or person, they had no constitutional duty to care for her because she was not incarcerated. We reject this argument. The state assumed custody and control of Chelsie upon her birth in the Wayne County Jail. Defendants therefore had an affirmative duty to care for her. *See DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989) (noting that "when the state takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being"); *see also Schneider v. Franklin Cnty., Ohio*, 288 F. App'x 247, 252-53 (6th Cir. 2008) (holding that police officers assumed a duty of care when they pulled over the car in which the plaintiff was riding without probable cause and forced her to exit the vehicle despite an obvious medical injury). This duty includes an obligation to provide adequate medical care. *See Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005) (states have "'a constitutional duty to provide adequate medical care to incarcerated prisoners, those involuntarily committed to mental institutions, foster children, pre-trial detainees, and those under other similar restraint of personal liberty.'" (quoting *DeShaney*, 489 U.S. at 200); see also *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) (holding that the Fourteenth Amendment gives non-convicted persons, such a pre-trial detainees, the right to adequate medical care while in state custody).

A prisoner's right to adequate medical care "is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir.2001). "[T]his court has long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner."

*Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (internal quotation marks and citations omitted).

"A constitutional claim for denial of medical care has objective and subjective components." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). "'Where the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person,' this obviousness is itself sufficient to satisfy the objective component of the adequate medical care test." *Johnson*, 398 F.3d at 874 (quoting *Blackmore*, 390 F.3d at 899). The virtually inevitable result of pregnancy and labor is the birth of a child. The birth of a child always presents a risk of serious injury to both mother and child. Adequate medical care means the appropriate standard of care under the circumstances. In this context, the appropriate standard of care would include birth in a place equipped with the personnel and resources to handle pregnancy-related emergencies, such as those which arose in this case.[1] The Wayne County Jail clearly was not so equipped, as the facts of this case make painfully clear. The objective component of deliberate indifference is satisfied.

The subjective component is fulfilled if the plaintiff shows that the prison official possessed a "sufficiently culpable state of mind" in denying medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Blackmore*, 390 F.3d at 895. The defendant must "be aware of facts from which the inference could be drawn that a risk of serious harm exists, and he must draw the inference." *Blackmore*, 390 F.3d at 896 (quoting *Farmer*, 511 U.S. at 837). "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Id.* (internal quotation marks and citation omitted).

---

[1]This place could, but need not, be a hospital. Some prisons may be equipped to meet this standard.

Despite their knowledge that Chantrienes Barker was at least seven months pregnant, that as of 3:00 a.m. on December 2 she was complaining of labor pains, that after 9:30 p.m. on December 2 she was dilated at 2 centimeters, and that at 1:30 a.m. on December 3 she was having contraction, and specifically told Defendants that the baby was "coming out," and that the Wayne County Jail was wholly unequipped to handle the delivery of a baby, Defendants did not take her back to Hutzel Hospital but merely called EMS instead. Moreover, Defendants did nothing in the twenty-seven minutes it took for EMS to arrive. Rather than rushing Chantrienes back to the hospital, Defendants simply waited for another entity which was not equipped to handle childbirth (much less a child born cyanotic). The subjective component of deliberate indifference is satisfied. *Cf. id*. at 900 (denying summary judgment to the defendants on a prisoner-plaintiff's deliberate indifference claim that they failed to summon a medical professional to examine the plaintiff who complained of severe abdominal pain and vomited–clear signs of appendicitis–for two days before he was treated).

In sum, we conclude that Chelsie stated a cognizable constitutional claim based on Defendants' deliberate indifference to her serious medical needs.

### B. Qualified Immunity

Jurisdiction to review the denial of qualified immunity is available only "to the extent that it turns on an issue of law." *Johnson v. Jones*, 515 U.S. 305, 313 (1995) (emphasis and internal quotation marks omitted).

The standards for assessing qualified immunity are well-established. Qualified immunity from liability is available to government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Anderson v. Creighton*, 483 U.S. 635, 640

(1987). In determining whether a right is clearly established, we "may rely on decisions of the Supreme Court, decisions of this court and courts within this circuit, and in limited instances, on decisions of other circuits." *Spurlock v. Satterfield,* 167 F.3d 995, 1006 (6th Cir. 1999); *see also Ohio Civil Serv. Emps. Assoc. v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988). In evaluating the relevant case law, we must determine whether the right has been recognized "in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson* 483 U.S. at 640. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (citations omitted). "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (citing *Hope v. Pelzer*, 536 U.S. 741-43 (2002)).

Defendants contend that they are entitled to qualified immunity because "no clearly established law would have warned the jail personnel that they were violating [Chelsie's] constitutional rights when they allegedly failed to provide adequate care to an unborn fetus during the birthing process." Appellant's Br. at 39. In support, they point to the district court's comment that the "legal consequences of injuries to children *in utero* are obscured by a judicially created haze." *See Havard*, 600 F. Supp. 2d at 859.

As an initial matter, we note that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741. Even in the absence of cases with "fundamentally similar" or "materially similar" facts, pre-existing law is sufficient to

give a reasonable officer "fair warning" that he may not act with deliberate indifference to the serious medical needs of a baby born in jail. *Cf. id*. This prohibition is reasonably inferred from prior case law holding that pre-trial detainees have a right not to be treated with deliberate indifference to their serious medical needs, *see Bell*, 441 U.S. at 545; *Blackmore*, 390 F.3d at 895, as well as from case law establishing that the state has a duty to protect and care for people in custodial situations, *see DeShaney*, 489 U.S. at 199-200; *Youngberg v. Romeo*, 457 U.S. 307, 317 (1982).

Defendants also argue that any constitutional duty to Chelsie did not arise until she was actually born, *see* Appellants' Br. at 29, and that no clearly established law imposed upon them a duty to anticipate her needs before that moment. Although this argument has some logical appeal, *cf. Danese v. Asman*, 875 F.2d 1239, 1244 (6th Cir. 1989) (holding that prison officials are not "required to screen prisoners correctly to find out if they need help"), it is simply unreasonable in the context of this case. This case presents a situation where the medical need was blatantly obvious and the medical risks were great. It takes very little foresight to anticipate that a baby will appear soon after labor begins. Holding that Defendants were required to respond to that medical need does not impose a duty on them beyond what the law already clearly establishes: prison officials cannot deliberately ignore the obvious and serious medical needs of those within—or imminently to be within—their custody.

The district court properly held that Defendants are not entitled to qualified immunity.

### C. Failure to State a Claim

This court reviews de novo a district court's dismissal of a complaint for failure to state a claim. *See Trzebuckowksi v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003).[2] To survive a motion to dismiss, the plaintiff must plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949. Plausibility requires showing more than the "sheer possibility" of relief but less than a "probab[le]" entitlement to relief. *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. However, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

We recently explained that:

> While recent decisions of the Supreme Court establish that, to survive a motion to dismiss, plaintiffs must state "plausible" grounds for relief, the decisions do not alter the basic rule that plaintiffs must plead only the basic elements of a claim, not develop all of the facts necessary to support the claim. *See Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57, 562, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Nor do *Iqbal* and *Twombly* displace the general rule that we construe all reasonable inferences, including those related to a plaintiff's legal theory, in favor of the claimants. *See Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 704 (6th Cir. 2009).

---

[2]The Supreme Court recently stated in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1946-47 (2009), that the sufficiency of the pleadings is both "inextricably intertwined with" and "directly implicated by" the qualified immunity defense such that the legal sufficiency of the complaint is properly considered on an interlocutory appeal denying qualified immunity.

*Hebron v. Shelby Cnty. Gov't*, 406 F. App'x 28, 30 (6th Cir. 2010). At the same time, "to survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citation omitted).

The First Amended Complaint meets this standard. Accepting the facts in the First Amended Complaint as true, a reasonable factfinder could conclude that Chelsie's imminent birth was so obvious that any reasonable person would have recognized the need for her immediate and proper medical attention at birth; that Defendants actually knew of the risk; and that they were deliberately indifferent to it. Or as the district court put it:

> In the present case, the complaint alleges facts that could be construed to constitute deliberate indifference to Chelsie's serious medical needs. The complaint alleges that the infant's mother was in active labor, crying out for help, to the knowledge of the defendants, and was left by the defendants in her cell for two hours; that the paramedics did not arrive until the infant was being delivered and did not have the equipment to resuscitate the child when she was delivered; and that all of this resulted in severe injuries to the infant. These facts establish both the objective and subjective components of the test. Thus, the allegations establish a violation of a constitutional right.

*Havard*, 600 F. Supp. 2d at 859.

This case is before us upon the district court's denial of Defendants' motion for judgment on the pleadings. We therefore must construe the complaint in the light most favorable to Plaintiff and accept her factual allegations as true. *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005). Based on those facts, Defendants are not entitled to dismissal.

### III. Conclusion

The district court's denial of Defendants' motion for judgment on the pleadings is AFFIRMED.