HELENE N. WHITE, Circuit Judge,
dissenting.
I respectfully dissent. The district court determined on the parties’ cross-motions for partial summary judgment that shackling Villegas during labor and postpartum recovery absent any indication that she was a flight risk or posed a risk of harm to herself or others, and denying her the breast pump hospital staff provided her on discharge, constituted deliberate indifference to a serious medical need. The material facts — the facts that might affect the determination of Defendant’s liability — were not in dispute. R.119-1 at 23-24; PID 2612-13, quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
A prison official is deliberately indifferent if he knows of and disregards a serious medical need or a substantial risk to an inmate’s health or safety. Farmer v. Brennan, 511 U.S. 825, 834, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Deliberate indifference suits against prison officials must satisfy both objective and subjective requirements. Id. at 837-39, 114 S.Ct. 1970.
Villegas established that shackling created an objectively substantial risk of serious harm in two ways; by showing that her condition as a laboring and then lactating woman 1) resulted in medically prescribed treatment and 2) was obvious to lay persons as a serious medical need. See Harrison v. Ash, 539 F.3d 510, 518 (6th Cir.2008); See also Havard v. Wayne Cnty., 436 Fed.Appx. 451, 454 (6th Cir.2011) (“The birth of a child always presents a risk of serious injury to both mother and child.”); Nelson v. Carr. Med. Servs., 583 F.3d 522, 530 n. 5 (8th Cir.2009) (en banc) (“That labor is inherently risky is well known ... and the hazards associated with labor and childbirth have entered the collective consciousness.”). “In 1994 [a federal district court in the District of Columbia] ... held defendant prison officials liable, explaining that a prison official who shackles a woman in labor acts with ‘deliberate indifference ... since the risk of injury to women prisoners is obvious.’.... Nelson’s protections from being shackled during labor had thus been clearly established by decisions of the Supreme Court and lower federal courts before September 2003.” Nelson, 583 F.3d at 532-33 (quoting Women Prisoners of D.C. Dep’t of Corr. v. District of Columbia, 877 F.Supp. 634, 668-69 (D.D.C.1994), modified in part on other grounds, 899 F.Supp. 659 (D.D.C.1995)).
The majority observes that Villegas’s right to be free from shackling during labor must be balanced against Defendant’s penological interest, and concludes that a question of material fact remained whether Villegas was a flight risk. I disagree.
First, deliberate indifference to a prisoner’s serious medical need “can typically be established or disproved without the necessity of balancing competing institutional concerns for the safety of prison staff.” Nelson, 583 F.3d at 530, quoting Whitley v. Albers, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (“The deliberate indifference standard articulated in Estelle [v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976),] was appropriate in the context presented in that case because the State’s responsibility to attend to the medical needs of prisoners does not ordinarily clash with other equally important governmental responsibilities,” however, in the face of a prison disturbance “prison officials must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the *582 possible harms to inmates against whom force might be used.”).
Here, Defendant maintained that Ville-gas’s restraints were “consistent with” her medium-security designation and that illegal immigrants in general pose a danger of flight. But Villegas’s medium-security designation did not take into account her late-term pregnancy or that she had gone into labor, nor was it based on any assessment of flight risk or risk of harm — it was automatic because of the Immigration and Customs Enforcement (ICE) detainer. Villegas was not being held for a crime of violence and had not been convicted of any crime. She was not individually assessed for flight risk or risk of harm to herself or others, and she had not engaged in any conduct evidencing such. See Brawley v. Wash., 712 F.Supp.2d 1208, 1219-20 (W.D.Wash.2010) (“[Tjhere is no evidence in the record which indicated that shackling Plaintiff was justified by any legitimate penological concern. There is no evidence that Plaintiff was dangerous to herself or others. There is no evidence that she posed a flight risk.”) Neither the ICE detainer’s automatic designation of Villegas as “medium-security” nor generalized evidence that illegal immigrants may pose a flight danger constitute “clear evidence” that Villegas was a security or flight risk.
Defendant’s asserted penological interest in shackling Villegas while she was being transported to and then hospitalized, to maintain control over her in an unsecured facility,[1] suffers from another flaw. It is undisputed that at least one armed officer was present in the ambulance, at least one armed officer was present in the hospital room or outside the room at all times, and the maternity ward at Metro General Hospital is locked down at all times, that is, a nurse must unlock the doors and authorize persons to enter and exit. In order to flee or pose a threat, Villegas would have had to harm or elude armed officer(s) and the nurse authorizing entry and exit from the maternity ward charged with unlocking the doors.
Finally, I note that even though Villegas went through labor and gave birth without threat of escape or harm to anyone, Defendant’s officers shackled her legs together postpartum while she walked, showered and used the toilet. This despite the fact that before the birth, a physician had ordered in writing that the shackles be removed. R. 86-17; PID 1609.
In sum, Defendant made no showing, and the facts belied, that shackling Ville-gas at any time was necessary, whether to effect their purported penological interest or otherwise.
Villegas satisfied the subjective component by demonstrating that Defendant’s officers acted with deliberate indifference to her serious medical needs, i.e., knew of and disregarded the substantial risk of harm posed by shackling her during labor and postpartum. An Eighth Amendment claimant “need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough to that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.” Harrison, 539 F.3d at 518, quoting Farmer v. Brennan, 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).
The district court’s opinion sets forth the evidence establishing that Defendant’s *583 officers were aware of the substantial medical risks posed by shackling women while in labor and during postpartum recovery and disregarded it. See R. 119-1 at 6-7; PID 2596-96/Mem. Op. The majority concludes that “no testimony reveals that Defendant or its officers ever knew about the existence of [the no-restraint order]” and thus that a factual dispute existed regarding Defendant’s officers’ knowledge of a substantial risk of serious harm. Maj. Op. at 576. This determination erroneously presumes that Defendant’s officers could know or become aware of the substantial medical risks shackling posed to Villegas only by entry of a written no-restraint order in her hospital file and the officers being “shown” the order. Even if this were the case, the record is clear that before the no-restraint order was placed in Villegas’s file, hospital nursing staff had asked the officers to remove Villegas’s shackles several times, had advised the officers that a no-restraint order was coming, and had advised officers of the high risk of blood clots after giving birth if the shackles were not removed.
The majority also concludes that conflicting expert testimony about the ill effects of Villegas’s shackling raised a material factual dispute. Maj. Op. at 578. I disagree. Given the long-established law on shackling during labor and postpartum and the undisputed facts, I agree with the district court that the declaration of defense expert Dr. Spetalnick did not raise an issue of material fact. R. 119-1 at 34 n. 9; PID 2624.
Dr. Spetalnick opined that restraining Villegas did not enhance the medical risks of deep venous thrombosis and pulmonary embolism or cause her excessive pain under the circumstance that she was restrained while in latent labor, the restraints were removed while she was in active labor, and remained off until hours after the delivery. He opined that the amount of ambulation recommended to prevent deep venous thrombosis “is not prevented by leg restraints as they were used” in Villegas’s case; that although a leg restraint is a theoretical impediment in the case of an emergency, a restraint would not prevent, significantly impede, or make less accurate the vaginal exam; and that although leg restraints can carry bacteria, there was no evidence that the use of restraints in this case created a significant infectious risk to Villegas.
Villegas’s expert witness Dr. Torrente opined that shackling increased the risk of injury to both Villegas and her unborn child, that Defendant’s officers subjected Villegas to unnecessary pain and suffering by shackling her after her water broke, and that Dr. Spetalnick’s claim that Ville-gas was only in latent labor while shackled did not mean from a medical standpoint that Villegas was not in pain or that birth could not have progressed very quickly. Among Dr. Torrente’s points unaddressed by Dr. Spetalnick were that shackling a woman after her water has broken is extremely dangerous because of a potential for umbilical cord prolapse, that once a woman’s membranes have ruptured a cervical exam should be performed as soon as possible for potential umbilical cord prolapse, that a proper cervical exam and monitoring cannot be conducted while shackled, and that shackling may restrict or delay the ability to provide emergency medical care; that medical personnel need constant unrestricted access to a woman in labor for complications that can occur including a non-reassuring fetal heart tracing, for which the patient needs to be able to move to her left lateral decubitus position to increase blood flow to the baby; that a woman must be able to freely move and walk as often as possible to reduce risk of blood clots; that restraining a woman in labor and postpartum enhances the *584 risk of injury to both woman and child because a woman should have full range of movement of limbs and remain ambulatory because of pain; that use of shackles during labor and postpartum is extremely unsanitary; and that the stress Villegas was placed under by shackling her increased the risk of injury to her and her unborn child. Dr. Torrente opined based on her review of Villegas’s medical charts and personal history (i.e., having had three children), that she could have easily progressed to the final phase of labor while shackled in the ambulance or in the hospital room, and pointed to the fact that she progressed from being dilated at 3 cm to 10 cm in only two hours as support, noting that Dr. Spetalnick apparently overlooked this point.
Nor did Dr. Spetalnick rebut Villegas’s expert and treating psychiatrist, Dr. De-Bona, who stated that because Villegas’s legs were shackled together while in the ambulance, she could not move or open her legs and faced the terror that her baby might die, believing there was no one to remove the shackles and that her labor would be short, as it had been with two of her children.
Dr. Spetalnick did not address Defendant’s officers’ denial of the breast pump provided Villegas by hospital staff. Ville-gas’s experts opined that if a woman is unable to express milk for several days because she does not have access to her child or to a breast pump, she can develop engorged breasts and mastitis, an infection of the breast tissue that results in severe breast pain, swelling, significant fever, rigors and chills. Dr. Torrente opined that Villegas’s development of mastitis was almost certainly caused by her inability to use a breast pump in the hours and day following her release from the hospital.
The subjective component of a deliberate indifference claim goes to whether Defendant’s officers were deliberately indifferent to substantial risks of serious harm posed by shackling. Defendant’s experts did not address several of the serious medical risks to which Villegas’s experts attested and did not rebut that shackling Villegas while en route to the hospital, during labor and postpartum, increased the medical risks of serious harm to Ville-gas and her unborn child. See R. 119-1 at 34; PID 2624/Dist. Ct. Op. I agree with the district court that no genuine or material factual dispute remained regarding whether Defendant’s officers knew of and disregarded the substantial risks of harm posed by shackling Villegas during labor and postpartum and denying her the breast pump hospital staff gave her on discharge.

. R. 117 at 11, 14; PID 2577, 2580/Def.'s Reply Mem. in Support of Summ. J. (asserting that Villegas "was restrained because she was a medium-security inmate being taken to an unsecured facility----Plaintiff simply cannot establish that DCSO’s use of restraints in this case was not reasonably related to a penological interest.”)