## NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 16a0582n.06

Case Nos. 15-3909/15-4090

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Oct 25, 2016

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| $506,069.09 SEIZED FROM FIRST MERIT | ) | OHIO |
| BANK, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| SYED JAWED AKHTAR-ZAIDI; ERUM | ) | |
| ZAIDI; PAIN MANAGEMENT OF | ) | |
| NORTHERN OHIO, INC., | ) | |
| | ) | |
| Claimants-Appellants. | ) | |

BEFORE: SILER, GIBBONS, and COOK, Circuit Judges.

**SILER**, Circuit Judge. Claimants Dr. Syed J. Ahktar-Zaidi ("Dr. Zaidi"), his wife, Erum Zaidi ("Erum"), and Pain Management of Northern Ohio, Inc. ("PMNO") (together, "Claimants") appeal the district court's order of forfeiture *in rem* of thirteen financial accounts and 139 pieces of jewelry. For the reasons set forth below, we AFFIRM the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Dr. Zaidi owned and operated PMNO, a pain management clinic in Solon, Ohio. In 2012 and 2013, undercover law enforcement officers presented as patients to Dr. Zaidi, who "performed at best a cursory examination" before prescribing to them Schedule II and III pain medication. As a result, the government alleged that Dr. Zaidi prescribed controlled substances outside the scope of his professional practice and without a legitimate purpose, in violation of 21 U.S.C. § 841. The Drug Enforcement Administration (the "DEA") eventually suspended his certificate of registration to distribute controlled substances.

The government further alleged that Dr. Zaidi laundered the tainted proceeds of his drug-trafficking activities by comingling them in various accounts in his own name and those of Erum and PMNO and that he then funneled the funds into investment portfolios and financial retirement accounts. This activity, the government says, enabled Dr. Zaidi to "successfully 'launder[]' the criminal proceeds and allowed for clean integration back into the financial system," in violation of 18 U.S.C. §§ 1956 and 1957.

In January 2014, the government filed an *in rem* forfeiture complaint against a number of bank and investment accounts in the names of Dr. Zaidi, Erum, PMNO, and various combinations thereof. The accounts' aggregate value totals approximately $4.8 million. The government also sought forfeiture of 139 pieces of jewelry allegedly purchased with the proceeds of Dr. Zaidi's trafficking and valued at over $90,000.

In February 2014, Claimants asserted their interests in the defendant assets. The court scheduled a case management conference ("CMC") for March 12, 2014, and required the parties to personally attend. On March 5, 2014, the Zaidis petitioned to be excused from appearing in person at the CMC due to "undue hardship," claiming that because their assets were frozen, they

had been forced to move to Pakistan to live with family. The court granted the motion. The government immediately petitioned the court to reconsider its ruling, arguing that the Zaidis had left the United States upon learning of the criminal investigation. Given the pending investigation, counsel agreed to stay the case until July 2014. The stay was later extended to October 2014.

In August 2014, the grand jury indicted Dr. Zaidi for one count of conspiring to distribute controlled substances, thirty-six counts of distributing controlled substances, one count of health care fraud, eight counts of money laundering, and a forfeiture specification naming the fourteen defendant properties discussed above. After Dr. Zaidi failed to appear at his arraignment, the district court issued an arrest warrant and deemed him "a fugitive from justice."

After Dr. Zaidi's indictment, the government moved to convert the upcoming telephonic conference to a CMC at which the Zaidis' personal appearance would be required. Opposing the motion, Dr. Zaidi submitted medical records and a letter from a Pakistani doctor suggesting that his heart condition precluded international air travel "for [the] foreseeable future."

In October 2014, Erum moved to dismiss the forfeiture complaint as it related to her personal jewelry and the seized accounts listed in her name. The court denied the motion, concluding that the complaint's factual allegations supported a reasonable belief that the government would be able to satisfy its burden of proof at trial. The court also denied Erum's motion to transfer a portion of the seized assets to pay the Zaidis' taxes and accountants, finding that she had not met the hardship requirements of 18 U.S.C. § 983(f)(1).

The court scheduled a CMC for January 2015, and again required the parties' attendance. The government noticed Erum's deposition for the same date as the CMC. But the day before the scheduled CMC and deposition, the Zaidis again moved to excuse their personal appearance.

They claimed that Dr. Zaidi's coronary-artery disease barred him from traveling, that Erum was the "sole caregiver and provider" for her young daughters, and that traveling to Cleveland "would place a tremendous hardship on her and her children." The Zaidis further noted that the United States State Department had warned American citizens against traveling to and from Pakistan.

During the next teleconference, the court directed Erum "to decide whether to litigate her forfeiture claim or abandon it." The court advised that because Erum was not a target of the criminal investigation, any attempt to "exercise[] her Fifth Amendment right not to incriminate herself at her deposition" would result in her being "deemed to have given up her claim on the seized assets." The court rescheduled the CMC for February 2015, and warned that if Erum failed to attend the proceeding, her claim would be dismissed for want of prosecution.

Four days before the scheduled CMC and deposition, Claimants moved for partial summary judgment as to the jewelry and all but one of the seized accounts. The same day, Erum renewed her motion to be excused from her personal appearance at the CMC given the pending summary judgment motion and her decision to "exercise her Fifth Amendment right and decline to testify under oath at a deposition." The district court denied the motion and deemed Claimants' motion for partial summary judgment prematurely filed.

The following day, Erum asked the court to reconsider its order. Denying the motion, the court issued the following directive:

> Mrs. Zaidi has not been named in the indictment issued against her husband. . . . And the Government represents that she is not a target of a criminal investigation. The fact that Mrs. Zaidi may be called as a witness in her husband's criminal prosecution, should he ever return to this country, is an insufficient basis upon which to make a blanket assertion of that privilege preceding her deposition in this civil forfeiture case. And it is altogether unacceptable for

> Mrs. Zaidi to determine whether her personal appearance at the CMC is necessary *despite a federal court order requiring her to be here.*
>
> Mrs. Zaidi has been stringing the Court along for months, allowing her time to make preparations to fly to the United States for two days to attend her deposition and the CMC. For these reasons, along with all the reasons previously addressed, Claimants' Motion for Reconsideration of the Court's Order of February 24, 2015 . . . is DENIED.
>
> If Mrs. Zaidi fails to appear tomorrow as ordered, the Court will dismiss her claim against the assets that are the subject of this civil case for want of prosecution.

Erum did not appear at the February 27, 2015, CMC. Consequently, the court dismissed her claim for want of prosecution.

Turning next to the "premature" motion for summary judgment, the court directed the government to provide "a general outline of additional evidence of criminal conduct beyond that set forth in the complaint along with evidence tying the money seized to that conduct." Finally, the court advised that it "did not intend to keep this case on its docket indefinitely, and that Dr. Zaidi must return to this country if he wishes to challenge the forfeiture."

Though the court acknowledged Dr. Zaidi's claimed heart condition, it noted that his medications consisted of "a beta blocker, nitroglycerin, and an aspirin" and that "millions of people . . . travel all the time with those same medications." During the teleconference, Dr. Zaidi explained that the seizure of his assets left him unable to afford an angiogram to determine whether he required bypass surgery. The court advised that Dr. Zaidi's counsel should file a motion to this effect and that the court would "free up some of the seized money" to pay for the procedures. The court stayed the case until June 8, 2015.

In May 2015, the court denied Claimants' motion for partial summary judgment. The court cautioned that "unless Dr. Zaidi returns to the United States by June 8, 2015, or makes some substantial showing that he will return after a further short delay, the Court will dismiss his claim to the seized assets and that of PMNO for want of prosecution."

On June 4, 2015, the court ordered Claimants to "show cause (including a date certain of his return) why Dr. Zaidi's and the corporation's claim should not be dismissed for want of prosecution." Claimants responded with a document entitled "This Record Presents the Antithesis of a Want of Prosecution."

In June 2015, the court dismissed Dr. Zaidi's and PMNO's remaining claims for want of prosecution. It concluded:

> The bottom line is that the Court will not permit these Claimants to litigate their claims to the seized assets *in abstentia and without discovery*. . . . By failing to return to the United States within the reasonable time period set by the Court, or otherwise advising the Court of when he will return, Dr. Zaidi simply thwarts the judicial proceedings.

The court granted the government's motion for forfeiture of all of the seized properties.

## DISCUSSION

**I.     The court did not abuse its discretion in dismissing the claims for want of prosecution.**

The court dismissed the Zaidis' claims under the broad authority vested by Federal Rule of Civil Procedure 41(b), which empowers district courts to dismiss an action for failure "to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b). We review a district court's dismissal for failure to prosecute for abuse of discretion. *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008).

Four factors generally guide the panel's determination of whether a district court's dismissal for failure to prosecute was an abuse of discretion:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal of the action.

*Carpenter v. City of Flint*, 723 F.3d 700, 70304 (6th Cir. 2013) (quoting *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 589 (6th Cir. 2001)). These factors suggest that the district court did not abuse its discretion in dismissing Claimants' actions.

### 1. Claimants' failure to prosecute is attributable to willfulness, bad faith, or fault.

"Although typically none of the factors is outcome dispositive," a party's bad faith may be the most compelling factor. *Knoll*, 176 F.3d at 363 (citing *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980)). "While 'willfulness, bad faith, or fault' have often been described in these terms of 'a clear record of delay or contumacious conduct,' that construction has more recently been supplemented by a requirement of 'either an intent to thwart judicial proceedings or a reckless disregard for the effect of [the plaintiff's] conduct on those proceedings.'" *Prime Finish, LLC v. ITW Deltar IPAC*, 608 F. App'x 310, 314 (6th Cir. 2015) (quoting *Schafer*, 529 F.3d at 737).

From the litigation's commencement, the court warned that it would not allow the Zaidis to litigate their case without returning to the United States. Dr. Zaidi, who suffered a heart attack and had a stent implanted in 2007, repeatedly argues that his heart condition rendered him unable to travel. But the court noted that many people take the same medications as Dr. Zaidi and

remain able to travel. Moreover, Dr. Zaidi failed to heed the court's suggestion that he should file a motion to release some of the seized money to pay for necessary treatments. The court noted that in his response brief, Dr. Zaidi "[did] not mention, let alone address, any of this." Given these facts, it is clear that their pretrial filings were dilatory tactics.

Dr. Zaidi relies upon *United States v. Salti*, 579 F.3d 656 (6th Cir. 2009), in support of his argument that the government must show, as matter of law, that his failure to return is solely an attempt to evade prosecution. He contends that because the government did not dispute his medical evidence, the court improperly disentitled him for "as long as he remains a fugitive from justice."

Had the court dismissed Dr. Zaidi's action based on the fugitive disentitlement statute, 28 U.S.C. § 2466, Dr. Zaidi might be correct. Applying that statute, *Salti* noted the government's failure to satisfy its burden and reversed the district court's dismissal of the third-party claim at issue: "If [the claimant] is indeed too sick to travel, such that his illness is what prevents him from returning to the United States, the Government has not shown as a matter of law that [the claimant's] being in [a foreign country], and not the United States, is 'in order to avoid criminal prosecution.'" 579 F.3d at 66566 (quoting 28 U.S.C. § 2466(a)(1)). But though various filings refer to Dr. Zaidi as a fugitive, he admits that the government "never formally moved for disentitlement." To the contrary, the court stated that "[t]he fugitive disentitlement doctrine . . . is irrelevant to this civil case." Dr. Zaidi's claims were not dismissed under a fugitive-disentitlement theory, but for want of prosecution. Accordingly, *Salti* does not render the court's determination an abuse of discretion.

Erum's conduct suggests an even more "reckless disregard for the effect of [her] conduct on [the court's] proceedings." *Prime Finish*, 608 F. App'x at 314 (quoting *Schafer*, 529 F.3d at

737). She repeatedly ignored the court's dictate to attend the scheduled deposition. Instead, she filed numerous motions restating the same Fifth Amendment argument that the court had previously rejected. As the court explained:

> Erum Zaidi cannot unilaterally decide that her presence is not needed at the CMC by her counsel's declaration. She is not a criminal defendant, and she is not entitled to assert a blanket exercise of her Fifth Amendment privilege. *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983). . . . There are areas of inquiry that would not subject Mrs. Zaidi to criminal exposure – the primary one being the question of whether she has standing to assert her claim against the seized assets in this civil forfeiture action. However, by announcing her intention not to testify at all at her deposition, she is foreclosing all areas of inquiry. The Court will not allow Mrs. Zaidi to unilaterally foreclose particular areas of inquiry regarding the facts underlying her claim to the seized assets while simultaneously reserving to herself the ability to selectively make declarations supporting her claim to those assets . . . .

The court correctly applied *Morganroth*, wherein the petitioner was subpoenaed for a deposition as a non-party witness in a civil action. Petitioner Morganroth argued that truthfully answering the same questions that he had been asked in a previous proceeding might subject him to a perjury charge. *See* 718 F.2d at 165. The Sixth Circuit determined that Morganroth's blanket assertion of privilege was "not enough." *Id.* at 167. Rather, Morganroth was required to "supply such additional statements under oath and other evidence to the District Court in response to each question propounded so as to enable the District Court to reasonably identify the nature of the criminal charge for which Morganroth fears prosecution . . . and to discern a sound basis for the witness' reasonable fear of prosecution." *Id.* Simply asserting the privilege is insufficient. Rather,

> [A] witness must supply personal statements under oath or provide evidence with respect to each question propounded to him to

> indicate the nature of the criminal charge which provides the basis for his fear of prosecution and, if necessary to complement non-testimonial evidence, personal statements under oath to meet the standard for establishing reasonable cause to fear prosecution under this charge.

*Id.* at 16970. Moreover, "[w]hile the privilege is to be accorded liberal application, the court may order a witness to answer if it clearly appears that he is mistaken as to the justification for the privilege in advancing his claim as a subterfuge." *Id.* at 167 (citations omitted).

Erum's blanket assertion of the privilege appears to be the sort of "subterfuge" contemplated by *Morganroth*. As the government notes, Erum's interpretation of the Fifth Amendment, like Morganroth's, would disallow any civil deposition "for fear that some unintentional exposure to potential criminal liability would occur if any question were answered." Her refusal to comply with the court's orders constituted defiance of its orders and authority.

### 2. The government was prejudiced by Claimants' conduct.

Applying the second factor, we have explained that prejudice results where "the [government] 'wastes time, money and effort in pursuit of cooperation which [the claimant] was legally obligated to provide.'" *Kovacic v. Tyco Valves & Controls, LP*, 433 F. App'x 376, 381 (6th Cir. 2011) (quoting *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997)).

From the case's beginning, the government voiced its concern that it could be obligated to perform "complex and time-consuming discovery, litigation[,] and trial preparation without any assurances that the claimants would ever return to the United States to pursue their claim." The government expended time, effort, and resources responding to numerous pleadings that Claimants filed in a clear effort to delay the proceedings. This factor weighs in favor of affirming the district court's dismissal of the Zaidis' claims.

> **3. The court warned Claimants that failure to cooperate could lead to dismissal.**

"As to the third factor, '[p]rior notice, or the lack thereof, is . . . a key consideration when determining whether a district court abuses its discretion in dismissing a case pursuant to Rule 41(b)." *Prime Finish*, 608 F. App'x at 315 (quoting *Stough v. Mayville Comm. Schs.*, 138 F.3d 612, 615 (6th Cir. 1998)). As stated above, the court repeatedly cautioned that it would not allow Claimants to litigate their claims from abroad. Though Claimants were on notice that the court was contemplating dismissal of their actions, they repeatedly flouted its orders. This factor, too, weighs in favor of affirming the district court's dismissal.

> **4. The court considered less drastic sanctions before dismissing Claimants' actions.**

We have stated that "the sanction of dismissal is appropriate only if . . . *no alternative sanction* would protect the integrity of the pretrial process." *Prime Finish*, 608 F. App'x at 315 (quoting *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 644 (6th Cir. 2005)). "Such caution is necessary because where the district court has not manifested consideration of less drastic sanctions, it is more difficult . . . to conclude that the district court exercised its discretion with appropriate forethought." *Id.* (quoting *Schafer*, 529 F.3d at 738 (internal quotation marks omitted)).

Here, the court attempted to accommodate the Zaidis' concerns regarding their ability to travel and Dr. Zaidi's purported medical condition. It rescheduled hearings and Erum's deposition at their request. Moreover, as noted above, the court offered to allow Dr. Zaidi to access the seized funds to pay for medical treatment allegedly required to allow him to travel. But given the Zaidis' recalcitrance, the court found that "dismissal is the only sanction the Court can exercise other than staying the case forever – something the Court will not do

For the foregoing reasons, the court's Rule 41(b) dismissal was prompted by the Zaidis' "intent to thwart judicial proceedings or . . . reckless disregard for the effect of [their] conduct on those proceedings.'" *Prime Finish*, 608 F. App'x at 314 (quoting *Schafer*, 529 F.3d at 737). Accordingly, the court did not abuse its discretion in dismissing Claimants' action for lack of prosecution.

## II.     The court did not err in denying Claimants' motion for partial summary judgment.

Prior to discovery, Claimants moved for partial summary judgment as to all but one of the seized financial accounts, as well as the jewelry. They argued that the civil forfeiture complaint was insufficient; that the government was bound by the evidence presented at the administrative hearing that resulted in the suspension of Dr. Zaidi's registration to prescribe controlled substances; and that the government lacked authority to seize Erum's personal jewelry. The court denied the motion.

We review the district court's denial of summary judgment de novo, applying the same Rule 56(c) standard as the district court and taking the facts in the light most favorable to the nonmovant. *Moldowan v. City of Warren*, 578 F.3d 351, 373 (6th Cir. 2009) (citations omitted). We also review de novo the district court's interpretation of federal forfeiture laws. *United States v. Coffman*, 612 F. App'x 278, 284 (6th Cir. 2015) (citing *United States v. O'Dell*, 247 F.3d 655, 679 (6th Cir. 2001)).

According to Claimants, the government's evidence was limited to the factual record developed at Dr. Zaidi's hearing before a DEA administrative law judge. But Claimants are incorrect. The administrative hearing concerned Dr. Zaidi's appeal of the DEA's suspension of his registration to prescribe controlled substances; it did not address the forfeitability of the properties at issue here. Claimants provide no authority suggesting that the government is

limited to evidence presented at an administrative hearing to prove a forfeiture complaint's allegations. To the contrary, the government may pursue evidence beyond that contained in the complaint: 18 U.S.C. § 983(c)(2) permits the government to "use evidence gathered *after* the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture." *Id.* (emphasis added).

Claimants next assert that the government lacked evidence to prove forfeitability beyond the allegations in its complaint. However, the government identified ample additional evidence of Dr. Zaidi's alleged conduct. In its memorandum, the government pointed to an expert's review of patient files, data analysis of Dr. Zaidi's prescribing history, Dr. Zaidi's own statements, and PMNO staff's observations that the majority of patients were "drug seekers." Moreover, the forfeiture statute permits the government to acquire additional evidence until the date of trial to prove the forfeitability of assets. *See* 18 U.S.C. § 983(c)(2). The government's evidence was sufficient to support the seizure of Claimants' assets.

Claimants next contend that because the government submitted no evidence in opposition to their motion for partial summary judgment, the court improperly denied the motion. They suggest that because the government did not rebut the representations in their motion and its 700 pages of attached exhibits, the court should have accepted their evidence as undisputed and thereby proven. But though claimants assert that "the government elected to stand on the mere allegations of its complaint" in response to their motion, they are again misguided. The government objected to being required to respond to Claimants' summary judgment motion because "such a response would require the [government] to unilaterally provide extensive discovery" to Claimants, despite their lack of intent to return to the United States. As such, the court did not require the government to respond to the motion with disclosure of its evidence.

Characterizing the motion as "premature" and based on an invalid theory of law, the court excused the government from filing a formal response supported by affidavits and evidentiary exhibits.

The court's reasoning was sound. Federal Rule of Civil Procedure 56(d) authorizes a court to "(1) defer considering [a summary judgment] motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order" upon a nonmovant's showing that "it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). To be sure, the government lacked an adequate opportunity to engage in discovery when Claimants filed their motion: by repeatedly disobeying the court's orders, Claimants effectively foreclosed discovery.

Claimants also note that the government did not avail itself of the procedure contemplated by Federal Rule of Civil Procedure 56(d)—that is, to "show[] by affidavit or declaration that . . . it cannot present facts essential to justify its opposition [to summary judgment]." This technicality is not determinative here. Before the deadline for filing a response to Claimants' motion, the court ruled sua sponte that the motion had been filed prematurely. Moreover, the court later opined that "Claimants' efforts to litigate this case without allowing the Government to conduct discovery is unfairly prejudicial to the Government." Confronted with Claimants' bad faith throughout this proceeding, the court's denial of their motion was not erroneous.

Finally, Claimants offer a substantive challenge to the forfeiture at issue. 18 U.S.C. § 981(a)(1)(C) subjects to forfeiture "[a]ny property . . . which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity.'" According to Claimants, the three undercover law enforcement officers made sixteen visits to PMNO and paid

the clinic a total of $2,135 in cash. The cash was deposited into PMNO's business account at First Merit Bank. Claimants argue that only the business account into which the cash was deposited was subject to seizure—not the remaining thirteen financial accounts or the jewelry.

The Civil Asset Forfeiture Reform Act of 2000 requires the government to establish by a preponderance of the evidence that the property in question is subject to forfeiture. 18 U.S.C. § 983(c)(1). Moreover, "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

According to Claimants, "There is no evidence in this record of a substantial connection between thirteen of the fourteen seized financial accounts or the jewelry, and to the alleged specified unlawful activity related to treatment of the three undercover operatives." They point to *United States v. Coffman*, which explains:

> Commingling of fraud proceeds with untainted money as part of concealment money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) permits the forfeiting of the untainted money in certain circumstances. . . . Forfeiture of commingled funds . . . is proper when the government demonstrates that the defendant pooled the funds to facilitate or disguise his illegal scheme. Commingling is enough to expose the legitimate funds to forfeiture, if the commingling was done for the purpose of concealing the nature or source of the tainted funds (that is, if the commingling was done to facilitate money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i)).

574 F. App'x 541, 561 (6th Cir. 2014) (internal quotation marks and citations omitted). Claimants observe that in *Coffman*, the government supplied bank records and financial analyses to support its theory that the defendant commingled tainted and untainted funds to conceal their

source. S*ee* 574 F. App'x at 561. By contrast, they say, "the government . . . did not offer a single piece of evidence establishing any connection between the tainted agent funds . . . to the other thirteen seized accounts or to the jewelry." They further argue that their alleged violations of 18 U.S.C. §§ 1956 and 1957 cannot stand, as the government did not show that any of the deposits were designed to conceal or disguise "the nature, the location, the source, the ownership, or the control of the proceeds." *See United States v. Dierker*, 417 F. App'x 515, 521 (6th Cir. 2011).

But the government responds convincingly:

> If the claimants had returned to the United States and discovery had commenced, they would have learned that expert analyses of pharmacy records, Medicare records, and patient medical records, would have supported the conclusion that a significant portion of Syed Zaidi's medical practice was outside of medical standards and amounted to drug trafficking; and from a financial analysis of his financial account records, that he laundered the proceeds of that drug trafficking into and between the seized financial accounts. However, claimants were not entitled to discovery of this information through the prematurely filed motion for partial summary judgment.

Had discovery commenced, the inadequacies that Claimants perceive in the government's case may have been confirmed. But Claimants' own absence thwarted such discovery. To allow them to benefit from that absence would defy fairness. The court's denial of Claimants' motion for summary judgment was not erroneous.

## III. The court did not err in denying Erum's motion to dismiss the complaint.

Claimants next challenge the court's denial of Erum's motion to dismiss the forfeiture complaint. We review de novo a district court's dismissal of a complaint for failure to state a claim. *Havard v. Wayne Cnty.*, 436 F. App'x 451, 456 (6th Cir. 2011). In forfeiture cases, such

motions are governed by 18 U.S.C. § 983 and Rules G(8)(b)(ii) and G(2)(f) of the Supplemental

Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental

Rules"). Section 983, which prescribes the general rules for civil forfeiture actions, provides,

"No complaint may be dismissed on the ground that the Government did not have adequate

evidence at the time the complaint was filed to establish the forfeitability of the property."

According to Supplemental Rule G(8)(b)(ii),

> In an action governed by 18 U.S.C. § 983(a)(3)(D) the complaint
> may not be dismissed on the ground that the government did not
> have adequate evidence at the time the complaint was filed to
> establish the forfeitability of the property. The sufficiency of the
> complaint is governed by Rule G(2).

*Id.* Rule G(2), in turn, establishes the requirements for an adequate civil forfeiture complaint, the

last of which provides that "[t]he complaint must . . . state sufficiently detailed facts to support a

reasonable belief that the government will be able to meet its burden of proof at trial."

Supplemental Rule G(2)(f).

Accepting the complaint's allegations as true, the government satisfied Rule G(2)'s

requirements: the complaint supports a reasonable belief that the government would be able to

prove at trial that Dr. Zaidi used Erum's accounts to launder the proceeds of his trafficking

activities. 18 U.S.C. § 981(a)(1)(C) authorizes the forfeiture of property "derived from proceeds

traceable to" a qualifying criminal violation, including unlawful trafficking in controlled

substances by a physician. *See* 21 C.F.R. § 1306.04(a) ("An order purporting to be a prescription

issued not in the usual course of professional treatment . . . is not a prescription within the

meaning and intent of . . . the [Controlled Substances] Act and the person . . . issuing it[] shall be

subject to the penalties provided for violations of the provisions of law relating to controlled

substances.").

Though Erum was not charged with a crime, assets in her name may nonetheless be subject to forfeiture. *See* 18 U.S.C. § 981(a)(1)(C) (subjecting to civil forfeiture "[a]ny property . . . which constitutes or is derived from proceeds traceable to" a qualifying criminal violation). The government's financial analysis suggests that Dr. Zaidi "engaged in a complex series of financial transactions using not only his own accounts, but those of his wife and company, to comingle the tainted proceeds with the untainted proceeds, and successfully laundered the tainted proceeds." As the court noted, "[T]he Government is not required to allege in the complaint all of the facts and evidence at its disposal. It is sufficient for the Government to simply plead enough facts for the claimant to understand the theory of forfeiture, to file a responsive pleading, and to undertake an adequate investigation." *See United States v. $22,173.00 in United States Currency*, 716 F. Supp. 2d 245, 248 (S.D.N.Y. 2010). Because "the complaint . . . contain[s] either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory," *Havard,* 436 F. App'x at 457 (internal quotation marks and citation omitted), the district court did not err in denying Erum's motion to dismiss.

**IV.  The court did not err in denying Claimants' motion to release the seized funds to pay their taxes.**

Finally, Claimants challenge the district court's denial of their motion to transfer $144,702.00 from the seized financial accounts to be applied to their federal, state, and local taxes. They also sought the transfer of an additional $9,150.00 to their accounting firm for their professional services. Denying the motion, the court looked to 18 U.S.C. § 983(f), which "outlines the circumstances under which civil forfeiture claimants are entitled to immediate release of seized property and the procedure to be followed in obtaining such release." *United States v. Contents of Accounts (Chavez)*, 629 F.3d 601, 608 (6th Cir. 2011). To demonstrate

entitlement to the release of property based on hardship, Claimants must satisfy § 983(f)(1)'s

requirements.

> A claimant . . . is entitled to immediate release of seized property if—
>
> (A) the claimant has a possessory interest in the property;
> (B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of the trial;
> (C) the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless;
> (D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding; and
> (E) none of the conditions set forth in paragraph (8) applies.

18 U.S.C. § 983. Paragraph 8 provides, in relevant part, that the subsection "shall not apply if

the seized property. . . is contraband, currency, or other monetary instrument, or electronic funds

unless such currency or other monetary instrument or electronic funds constitutes the assets of a

legitimate business which has been seized." 18 U.S.C. § 983(f)(8)(A).

The court determined that the Zaidis could not demonstrate the community ties required

by § 981(f)(1)(B), as they had placed their Ohio home on the market and were "actively avoiding

the practical reach of the Court's civil and criminal jurisdiction by remaining in Pakistan." It

also noted that because the Zaidis sought the funds to pay their taxes and accountants, they could

not demonstrate that the funds would be available at the time of trial. Finally, the court

acknowledged that § 983(f)(8)(A) excludes from release seized currency and other monetary

instruments unless they "constitute[] the assets of a legitimate business which has been seized."

It determined that this provision did not apply, as "it cannot be said that PMNO was a legitimate business."

Claimants assert that the court errantly applied § 983(f)(1). They note that though the statute provides for the release of seized property to the *claimant*, they sought instead to transfer seized funds to the Department of Treasury. Such transfer, they say, is not contemplated by § 983(f)(1). But Claimants point to no statute that allows such transfer. As such, the court's denial of the motion was not erroneous.

AFFIRMED.